711 A.2d 193

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Powell David GAVIN.**

**Misc. AG No. 36, September Term, 1997.**

Court of Appeals of Maryland.

June 11, 1998.

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel, for the Attorney Grievance Com'n of Maryland.

Robert C. Bonsib, Greenbelt, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASNOW, WILNER and CATHELL, JJ.

CATHELL, Judge.

The Attorney Grievance Commission filed a Petition for Disciplinary Action against Powell David Gavin for his failure to file state and federal tax returns and to pay timely state and federal taxes for the years of 1985 through 1988. The Circuit Court for Montgomery County found that although Gavin did not willfully fail to file the returns or willfully fail to pay timely any taxes due for those years, he did willfully fail to rectify timely those delinquencies after learning of them. Both parties filed exceptions.

Because the findings of the court were supported by clear and convincing evidence and not clearly erroneous, we overrule both parties' exceptions and impose as a sanction for Gavin's misconduct a reprimand.

## I.

On July 10, 1997, the Attorney Grievance Commission of Maryland, petitioner, filed a Petition for Disciplinary Action in this Court against Powell David Gavin, respondent. This petition alleged:

[ ] Respondent knowingly and willfully failed to timely file Federal or State Income Tax Returns as required by law for the calender years 1985, 1986, 1987 and 1988.

[ ] Respondent knowingly and willfully failed to timely pay Federal or State Income Taxes as required by law for the calender years 1985, 1986, 1987 and 1988.

Based on these allegations, petitioner averred that respondent violated section 1–102 of the Disciplinary Rules of the Code of Professional Responsibility (DR 1–102)[1] for his acts

---

1. The Disciplinary Rules of the Code of Professional Responsibility were the rules of professional conduct in effect in Maryland until January 1, 1987, when they were superceded by the Maryland Lawyers' Rules of Professional Conduct. DR 1–102, the relevant provision then in effect for misconduct alleged to have been committed by respondent before January 1, 1987, provided in pertinent part:

    (A) A lawyer shall not:
    (1) Violate a Disciplinary Rule.

and omissions occurring prior to January 1, 1987, and violated Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct (Rule 8.4) [2] for acts occurring on or after January 1, 1987.

Pursuant to Rule 16–709b,[3] we referred the matter to Judge James C. Chapin of the Circuit Court of Montgomery County to conduct a hearing and report his findings of facts and conclusions of law on these disciplinary charges. His report was filed in this Court on February 26, 1998. We set forth Judge Chapin's findings of fact from that extensive report:

The court finds by a preponderance of the evidence that the testimony of Respondent, and that of the other witnesses who testified in this matter (all of which testimony was virtually uncontroverted) was truthful. Thus, the following findings are based substantially thereon.

*Respondent's general background.*

---

(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

2. Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

3. Formerly Md. Rule BV9b.

Respondent is a practicing attorney licensed to practice law in Maryland and the District of Columbia. He was admitted to the bar in the District of Columbia in 1974 and to the Maryland bar in 1985.

Respondent began his professional employment with the law firm of Reynolds, Mundy, Anderson & Gibson as an associate. He remained so employed until 1983. Thereafter until 1986 he was a sole practitioner. During the first quarter of 1986, he joined a law firm in Rockville, Maryland which at that time became Mann, Longest & Gavin and later became Longest & Gavin. He continued his general practice with Longest & Gavin until the firm dissolved in 1991. He then resumed a solo practice.

*The procedure for handling financial and tax matters in the Gavin household prior to December, 1988.*

From the time of their marriage in 1977, there had been an agreed upon division of responsibility in the Gavin household concerning the handling of family financial and tax matters. Within that arrangement, Mrs. Gavin essentially had sole responsibility for paying household bills and for garnering the necessary documentation and information for the preparation of the Gavin family federal and state tax returns. Mrs. Gavin would collect the necessary material and take it to a neighborhood tax preparer who would then actually prepare the tax returns which Mrs. Gavin would then duly file. On occasion and as she deemed appropriate, pursuant to the understanding between the Gavins, prior to filing these returns Mrs. Gavin would sign both her name and that of Respondent to them. If funds in excess of those which were already in the household checking account were needed to pay taxes, she would so advise Respondent who would transfer the necessary amount of money into that checking account so that the taxes could be paid by Mrs. Gavin. This method of gathering documentation and information, preparing the tax returns and paying the taxes was satisfactorily followed without incident for several years. When Respondent inquired regarding tax matters from time to time, Mrs. Gavin would give him verbal assurances that

all required taxes had been paid when due. Consequently, based on that prior experience, Respondent had no warning of any problem or reason to question the truthfulness of these assurances prior to 1988.

Mrs. Gavin's educational background included a college degree and post graduate work; and she seems to be an intelligent person entirely capable of properly overseeing the preparation and filing of appropriate federal and state tax returns.

*Failure of Respondent to file 1985 income tax returns when due and to pay 1985 taxes when due.*

As Mrs. Gavin began her normal yearly efforts for the preparation of the 1985 income tax returns, she encountered difficulty in locating where she had placed the necessary information and records to determine and support itemized deductions. There was a flood in the basement of their home where boxes of various records were being stored. As a result of that flood, without first examining the content thereof, Mrs. Gavin threw out a number of water soaked boxes. She only later reasoned that in doing so, she had inadvertently discarded papers necessary for determining and supporting their itemized deductions for 1985.

When Mrs. Gavin first encountered difficulty locating that information and documentation, it did not occur to her that she had thrown it out, and she believed that it eventually would be located. However, by April 15, 1986, when the deadline for the filing of the 1985 tax returns arrived, Mrs. Gavin still had not located the information. When she realized that she had unintentionally destroyed it, she took no action with respect to the filing of the 1985 tax returns. At that point, Mrs. Gavin focused only on the anger that would be generated once Respondent found out that the files had been destroyed; and she chose simply to block the problem out of her mind. Respondent continued to believe that his wife had filed the family's federal and state income tax returns for 1985 and had paid those taxes, having received several assurances from Mrs. Gavin that those tax returns had been filed and the taxes paid.

*Failure of Respondent to file 1986 income tax returns when due and to pay 1986 taxes when due.*

After Mrs. Gavin failed to file the 1985 tax return, she put the matter out of her mind until the 1986 tax returns were due to be prepared. In the first quarter of 1987, as the deadline for the submission of the 1986 tax returns approached, Mrs. Gavin gathered together information and documentation to determine and support their itemized deductions, including her request for and receipt of information from Mr. Gavin. Since the tax preparer whom the Gavins had used in prior years had moved away, for the preparation of the 1986 tax returns Mrs. Gavin contacted H & R Block. Upon meeting with an H & R Block tax preparer, the first thing the tax preparer requested was a copy of the 1985 tax returns. Because 1985 tax returns did not exist, she became frightened and upset. She left the tax preparer's office, again putting the matter out of her mind, and took no further action to prepare the 1986 tax returns.

In April 1987, without Respondent's knowledge, federal and state tax return filing extensions were requested by Mrs. Gavin together with a payment of Five Hundred Dollars ($500.00) toward the federal income taxes and Three Hundred Dollars ($300.00) toward the state income taxes. She again decided to keep this escalating problem from Respondent. Thus, when Respondent asked his wife about the status of the 1986 tax returns, Mrs. Gavin assured him that the tax returns had been prepared and filed for tax year 1986, and that the taxes had been paid. Just prior to the April 15, 1987 deadline, Mrs. Gavin had asked Respondent for money to pay the 1986 taxes and he gave those funds to her, which she then used as the payments that accompanied the extension requests. When the extension period expired, she did nothing further regarding 1986 taxes.

*Failure of Respondent to file 1987 income tax returns when due and to pay 1987 taxes when due.*

The pattern that had developed in the proceeding two years continued throughout 1987, with Mrs. Gavin at this

point essentially abandoning any effort to prepare and file the income tax returns. She did, however, collect the documentation and information necessary to calculate and support that year's itemized deductions. She also asked Respondent for additional money, purportedly to pay income taxes, and Respondent provided the requested monies for that purpose. Mrs. Gavin filed extension requests for the filing of the 1987 tax returns. Using the funds Respondent had given his wife, a Four Thousand Dollar ($4,000) payment was made by her in April, 1988, with the request to extend time to file the federal income tax return. An extension request was also filed by her to delay the deadline for filing the state return.

Beginning perhaps as early as late 1987, Respondent repeatedly asked his wife for copies of their previous years' income tax returns. This request was made for the purpose of providing the returns with a mortgage application in connection with the purchase of a new family residence. Mrs. Gavin continually put off Respondent, providing a variety of excuses for why she was not able to locate the returns, and assuring Respondent that she would provide them at a later date. Eventually, Respondent requested copies of those returns directly from the Internal Revenue Service ("IRS"); and received a form response that the IRS could not locate the returns.

*Failure of Respondent to file 1988 income tax returns when due and to pay 1988 taxes when due.*

When the IRS was unable to provide him with copies, Respondent began making stronger demands on Mrs. Gavin to produce copies of the earlier years' tax returns. Finally in December, 1988, Mrs. Gavin disclosed to Respondent that the tax returns had neither been filed for 1985, 1986 and 1987, nor had she paid any taxes except those accompanying extension requests. Respondent became extremely upset. This caused an immediate and severe family crisis which raged for a number of months and the family remained traumatized for over two years. Upon the disclosure, Respondent immediately removed from Mrs. Gavin all respon-

sibility for home financial and tax matters. In early 1989, as a result of this crisis, Mrs. Gavin began seeking professional counseling assistance which continued for several years. In the middle part of 1989, at the suggestion of that counselor, both Respondent and Mrs. Gavin were referred to a clinical psychologist.

*Respondent's conduct and actions upon learning of the failure to file prior tax returns or to pay taxes.*

With respect to the filing of the 1988 tax returns, within one or two months following the disclosure to him by Mrs. Gavin, Respondent consulted two separate professionals in the field of tax preparation and received conflicting advice as to what to do. From early 1989 until the fall of that year, Respondent did little to attempt to resolve the problem. To defer further immediate problems, in April of 1989, he filed a filing extension request with the IRS for 1988, along with a Five Thousand Dollar ($5,000) payment, and a filing extension request to the State of Maryland together with a Seven Hundred Seventy-five Dollar ($775) payment. In August, additional extension requests were filed which extended the deadline by which the 1988 tax returns were to be filed until October 15, 1989.

Prior to the expiration of the second extension period, on October 4, 1989, Respondent met with William Rinehart, who advertised and held himself out as a C.P.A. specializing in reconstructing and properly filing past due tax returns. Respondent was advised not to file any tax returns for 1985 through 1988 until Mr. Rinehart could determine how to deal with all of the tax years. Mr. Rinehart also advised Respondent that no return should be filed for any delinquent year until the return for the prior delinquent year had first been filed, because filing a return out of annual sequence would "raise a red flag" to the IRS as to the absence of the earlier years' tax returns and tax payments. This strategy proved effective since the IRS made no demand or sent any communication to Respondent at any time. Consequently, when the October 15, 1989 deadline for the filing of the 1988 tax returns passed, Respondent nei-

ther filed his federal or state income tax returns nor made any additional payments.

*Time elapsed between December 1988 disclosure by Mrs. Gavin and the filing of tax returns for 1985, 1986, 1987 and 1988.*

The 1985 tax returns were not filed until October 1990, nearly two years after Respondent learned of the problem. The 1986 tax returns were not filed until 1993, nearly five years after Respondent learned of the problem. The 1987 and 1988 tax returns were not filed until 1994, nearly six years after Respondent learned of the problem. With respect to 1985, no taxes were due since Respondent had actually suffered losses in that year. With respect to 1986 when he finally paid them, Respondent overpaid his taxes by $18,000. Because of the expiration of the statute of limitations for refunds, Respondent was not able to claim a refund for that overpayment. With respect to 1988, Respondent overstated his income by approximately $30,000. That resulted in his initial payment of substantially more taxes than were due; however, he was able to obtain a refund with respect to the overpayment.

It is significant to note that the records which were destroyed or missing for all years in question dealt almost, if not entirely, with deductions and expense items. Conversely, the information regarding Respondent's income was readily available to Respondent at all times. At the hearing, Respondent, his wife and Mr. Rinehart testified vaguely as to why it took such a lengthy period to reconstruct the information necessary to calculate and support itemizations of deductions, and to file each return. This is particularly true regarding 1986, 1987, and 1988. The documents and information for those later years obviously [were] not destroyed by the 1985 flood. Mrs. Gavin had, during each of those years, collected it. Why she was not able to provide it shortly after December, 1988, was never satisfactorily explained.

Furthermore, notwithstanding the fact that Respondent had his *income* information readily available, it was never

adequately explained why, after learning of the problem, he did not promptly file tax returns and pay the taxes for each delinquent year, claiming the standard deductions, with the potential of filing amended returns later when the reconstruction of expenses was completed. Clearly, Respondent had sufficient funds to pay all these taxes at any time after December 1988, inasmuch as he had over $150,000 in certificates of deposit available. Upon inquiry by the court on that issue, Respondent stated he was following the advice of his tax consultant, Mr. Rinehart; and that if Mr. Rinehart had made such a suggestion, he would have done so.

Judge Chapin concluded that petitioner did not prove by clear and convincing evidence that respondent violated either DR 1–102 or Rule 8.4 for his conduct prior to December 1988 because his failure to file timely "returns and pay taxes for 1985, 1986 and 1987 were not the result of Respondent's intentional acts." Further, although he may have misunderstood tax law by permitting his wife to sign his name to their returns, he did so in good faith. Finally, the judge concluded that respondent's actions prior to December 1988 were not willful violations of criminal law, did not "evidence lack of moral turpitude, dishonesty, fraud, deceit or misrepresentation," and that respondent was not negligent in relying on his wife to file the returns and pay the taxes.

With regard to his conduct after December 1988, however, Judge Chapin concluded that respondent violated Rule 8.4(d). The judge stated: "Once Respondent learned of these ongoing delinquencies, in the court's view he was obligated by tax law and by the Rules of Professional Conduct to act promptly to comply with that law." Judge Chapin was unpersuaded by respondent's arguments that he should not be held accountable for his failures to file the returns and pay the required taxes because he was in good faith following the advice of his tax expert, he could not timely reconstruct his tax records, and he was under a great amount of stress in his personal and professional life because of these incidents. Judge Chapin concluded: "The court finds that Respondent violated Rule 8.4(d) by engaging in conduct that is prejudicial to the admin-

istration of justice. Although the court does not conclude that Respondent intended to evade his legal tax obligation indefinitely, his delayed compliance with those obligations was, in a different sense, willful." Judge Chapin recognized respondent's unique situation and stated: "Through no attributable fault of his own, [respondent] had become a delinquent taxpayer who was, arguably, subject to criminal sanctions." Respondent's error, the judge found, was his unreasonable delay in correcting the problems.

Both petitioner and respondent now raise exceptions to Judge Chapin's findings of fact and conclusions of law. Petitioner excepts

to Judge Chapin's failure to find that prior to 1978 Respondent had reviewed and signed his tax returns and that he knew that tax returns were signed under the penalties of perjury indicating that the return had been reviewed for accuracy. Petitioner further excepts to Judge Chapin's failure to find that Respondent failed to examine and review his tax returns for 1985, 1986 and 1987.

Petitioner also excepts "to Judge Chapin's failure to conclude that, prior to 1988, Respondent's failure to timely file his tax returns and pay his taxes was willful and violated Disciplinary Rule 1–102(A)(1), (5), and (6) and Rule of Professional Conduct 8.4(d)." Finally, petitioner recommends that respondent be suspended from practice for a period of two years.

Respondent raises the following exceptions:

*EXCEPTION 1:* The conduct of the Respondent was not "conduct prejudicial to the administration of justice" and, therefore, does not constitute grievable [sic] conduct under Rule 8.4(d).

. . . .

*EXCEPTION 2:* The[re] was no showing by clear and convincing evidence of misconduct, particularly as the Respondent had properly relied upon the advice of a certified public accountant in attending to the tax delinquency problem and attended to the tax delinquency problem by following the advice of his accountant[.]

. . . .

*EXCEPTION 3:* The conduct for which the Petitioner was sanctioned was alleged misconduct not specified in the Petition For Disciplinary Action.

. . . .

*EXCEPTION 4:* No sanction is appropriate in the instant matter and the charges in the Petition should be dismissed.

Judge Chapin's findings of fact and conclusions or law were supported by clear and convincing evidence. Therefore, we shall overrule all of the exceptions of both parties. We explain.

## II.

■ This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709b; *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Accordingly, the ultimate decision as to whether a lawyer has violated professional rules rests with this Court. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

## A. Petitioner's Exceptions

■ Petitioner's first two exceptions relate to Judge Chapin's failure to make certain findings of fact regarding respondent's knowledge that tax returns are signed under penalties

of perjury, that they have been reviewed by the signatory, and that respondent failed to examine his returns for 1985, 1986, and 1987. As we have stated, in attorney grievance matters we regard a hearing judge's findings of facts as *prima facie* correct and will not disturb these findings unless they are clearly erroneous. This Court said in *Goldsborough*, 330 Md. at 356, 624 A.2d at 509:

> It is the essence of the fact-finding function that a trial judge clearly " 'may elect to pick and choose which evidence [or story] to rely upon.' " *Powell*, 328 Md. at 292, 614 A.2d at 110 (quoting *Attorney Grievance Comm'n v. Nothstein*, 300 Md. 667, 684, 480 A.2d 807, 816 (1984)).

In addition, we must give due regard to the trial court and its opportunity to assess each witness's credibility. *Goldsborough*, 330 Md. at 346, 624 A.2d at 509.

■ At the hearing before Judge Chapin, petitioner presented two witnesses along with various other records in its case against respondent. Respondent, in his defense, testified on his own behalf and presented the testimony of his wife, a tax attorney, psychologists, previous employees, and several members of the bench and bar, all of whom testified in support of respondent as to the facts in this case and his reputation for truth, veracity, honesty, and integrity. Judge Chapin specifically found and articulated in his Findings of Fact "by a preponderance of the evidence that the testimony of Respondent, and that of the other witnesses who testified in this matter (all of which testimony was virtually uncontroverted) was truthful." Given the ample evidence presented at the hearing, we decline to hold that Judge Chapin was clearly erroneous when he failed to make the findings excepted to by petitioner. Judge Chapin clearly had an opportunity to consider all of the evidence and testimony presented. Evidently, he was persuaded by respondent and did not find supportable by a preponderance of the evidence petitioner's present exceptions. Accordingly, we shall overrule petitioner's first two exceptions.

■ Petitioner's third exception relates to Judge Chapin's failure to conclude as a matter of law that respondent's conduct in failing to timely file his tax returns and pay his taxes was "willful and violated Disciplinary Rule 1–102(A)(1), (5), and (6) and Rule of Professional Conduct 8.4(d)." Petitioner correctly asserts that this Court, when imposing sanctions in attorney grievance matters, has "defined 'willfulness' in the context of 26 U.S.C. § 7203 to be a 'voluntary, intentional violation of a known legal duty,' but not an act necessarily infused with deceitful or fraudulent motive." *Breschi*, 340 Md. at 602, 667 A.2d at 665 (citing *Attorney Grievance Comm'n v. Boyd*, 333 Md. 298, 309, 635 A.2d 382, 387 (1994)). Judge Chapin stated unequivocally in his Conclusions of Law, however, that petitioner did not prove

by clear and convincing evidence that either rule was violated by Respondent's conduct prior to December, 1988. As stated in its Findings of Fact, the court concludes affirmatively that the failures to timely file returns and pay taxes for 1985, 1986 and 1987 were not the result of Respondent's intentional acts.... [T]he court believes that Respondent was acting in good faith in permitting his spouse to sign his name, and that a mistaken understanding of tax law (if, indeed, it was such) does not, in this case, rise to a willful violation of criminal law nor does it evidence a lack of moral turpitude, dishonesty, fraud, deceit or misrepresentation.

We do not believe Judge Chapin's conclusion to be clearly erroneous. The judge obviously believed that respondent did not intend to violate his legal duty to submit tax returns and pay his tax obligations. Rather, respondent believed his wife to be taking care of the tax matters because they had agreed previously to this arrangement. Respondent never had reason to suspect his wife was not taking care of their tax obligations because, up until 1988, no problems with the family's arrangements were known to him.[4] Based on this

---

4. In this case respondent was charged with failing to file timely tax returns and to pay timely income taxes for several years. With respect to the years at issue, respondent's wife did not affix respondent's

and other evidence presented at the hearing, Judge Chapin found that respondent did not participate voluntarily or intentionally in the failure to file the returns or the failure to pay any taxes due. Therefore, we do not believe that Judge Chapin was clearly erroneous in his conclusion that respondent's actions prior to 1988 were not willful and did not violate either DR 1–102(A)(5) or Rule 8.4(d). We overrule petitioner's third exception.

We shall address petitioner's concern about the proper sanction in Section III, *infra*, where we discuss respondent's similar complaint. We turn now to respondent's exceptions.

## B. Respondent's Exceptions

Respondent first excepts to Judge Chapin's conclusion that, because of his actions after December 1988, respondent violated Rule 8.4(d). More specifically, respondent avers he did not violate Rule 8.4(d) because his "private conduct ... not resulting in a criminal conviction, not having an impact on the practice of law and not alleged to involve dishonesty, fraud or deceit has [not] been held to be conduct 'prejudicial to the administration of justice.' " What is more, respondent contends that

certain matters are private in nature and where it is established that those matters have no nexus or relationship to an individual's status as an attorney, there is no reasonable basis upon which to find that an individual's private conduct can form a basis for a finding that that conduct is prejudicial to the administration of justice. This is such a case.

■ We disagree. Respondent took an unreasonable amount of time to correct the errors relating to his overdue returns and tax obligations. Although not prosecuted by the

signature on tax returns; she failed to file the returns. We note, nonetheless, that tax returns are filed under the penalty of perjury. Joint returns normally are required to be signed by both spouses. It is, at the least, inappropriate, and although we do not here decide the issue, probably illegal for a spouse to affix the signature of the other spouse to a joint tax return, unless done pursuant to 26 C.R.F. section 1.6012–1(a)(5).

Internal Revenue Service for his misconduct and although these matters were not associated directly with his legal practice, respondent's actions do constitute conduct prejudicial to the administration of justice. We have held that when an attorney willfully fails to file tax returns and pay taxes in a timely fashion, even though he never was prosecuted criminally and eventually paid his tax obligations, such conduct "is inherently 'conduct that is prejudicial to the administration of justice.'" *Breschi*, 340 Md. at 600, 667 A.2d at 664. Despite his conclusion that respondent did not willfully fail to file the returns and pay the taxes, Judge Chapin did conclude that respondent's "delayed compliance with those obligations was, in a different sense, willful." We hold that this willful delay of correcting tax delinquencies, here spanning from two to six years from the date respondent became aware of the delinquencies, is conduct prejudicial to the administration of justice and violates Rule 8.4(d).

We also disagree with respondent that his conduct had no direct link to his legal practice or status as an attorney. To the contrary, "Rule 8.4(d) and its substantially identical predecessor, DR 1–102(A)(5), have often been applied to an attorney's conduct outside of the judicial process." *Goldsborough*, 330 Md. at 358–59, 624 A.2d at 511 (holding that attorney's conduct of spanking clients and employees violated the Rules of Professional Conduct). *See also Attorney Grievance Comm'n v. Barnes*, 286 Md. 474, 479–80, 408 A.2d 719, 723 (1979) (quoting *Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 464–65, 374 A.2d 354, 361 (1977)). This is because "a lawyer is an officer of the court. Any time a lawyer commits an act of dishonesty, fraud or deceit, the public loses confidence in the integrity of those officers and the judicial system as a whole." *Attorney Grievance Comm'n v. Casalino*, 335 Md. 446, 452, 644 A.2d 43, 46 (1994). As we have said, in the case at hand Judge Chapin found respondent did not willfully fail to file and pay his taxes *initially*. After learning of his wife's failure to file and pay their taxes, however, respondent took an unreasonably long period of time to come into compliance with his obligations. This conduct, the judge found, was

"willful." Therefore, under the circumstances of this case, Judge Chapin did not err in concluding that respondent's willful delay was conduct sufficiently relevant to the practice of law constituting conduct prejudicial to the administration of justice.

Respondent's second exception alleges that the petitioner did not show by clear and convincing evidence that his actions amounted to misconduct, particularly taking into consideration respondent's good faith reliance on the advice of his certified public accountant. He asserts that under *U.S. v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), a taxpayer can reasonably rely upon his or her accountant on a tax law matter, thereby precluding a finding of misconduct by respondent. We think respondent reads *Boyle* too broadly. In that case, Boyle was named the executor of his mother's estate and retained Ronald Keyser to serve as the attorney for the estate. Keyser notified Boyle that the estate was required to file a federal estate tax return, but did not inform Boyle of the filing deadline, which was nine months after the death of the decedent. Although contacted several times by Boyle and Boyle's wife to inquire about the estate and the preparation of the tax return, Keyser overlooked the matter because of a clerical error and did not file the estate return timely.

The Internal Revenue Service assessed a tax and penalty of $17,124.45 and $1326.56 in interest against the estate for the late filing. Boyle conceded that the assessment for interest was proper, but asserted "that the penalty was unjustified because his failure to file the return on time was 'due to reasonable cause,' *i.e.*, reliance on his attorney." *Boyle*, 469 U.S. at 244, 105 S.Ct. at 689, 83 L.Ed.2d 622. The Supreme Court disagreed under the facts of that case. It stated that in cases in which the taxpayer relied on the erroneous advice of a tax attorney or accountant as to a question of law, reasonable reliance on that tax professional's advice could constitute reasonable cause for failing to file or not timely filing returns. The Court went on to note that "[m]ost taxpayers are not competent to discern error in the substantive advice of an accountant or attorney.... By contrast, one does not have to

be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due." *Id.* at 251, 105 S.Ct. at 692–93, 83 L.Ed.2d 622. Accordingly, the Court held, Boyle's failure to meet the filing deadline could not be excused by his reliance on the estate's attorney.

The case at hand is similar to *Boyle.* Here, respondent did not rely on his accountant's advice as to a question of law but as to a matter of procedure. Respondent knew and understood at the time he consulted his accountant that the returns and taxes were overdue. The accountant's advice to delay filing did not address a question of law. Rather, the advice addressed the best plan of action to avoid IRS investigation and prosecution, not whether respondent had or had not violated those laws. Additionally, respondent is hardly the average taxpayer contemplated by the Supreme Court in *Boyle.* Instead, he is an attorney and held to a higher standard in these situations. He should have known that the proper course of action was to file the returns and pay the taxes upon learning of the delinquencies. We have said:

> "An attorney's willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration.... The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law."

*Barnes,* 286 Md. at 479–80, 408 A.2d at 723(quoting *Walman,* 280 Md. at 464–65, 374 A.2d at 361).

The evidence presented at the hearing clearly demonstrated that in December 1988, after he became aware of the ongoing tax delinquencies, respondent failed to take action immediately to come into compliance with his obligations. Asserting that he relied on advice from his accountant hired in October 1989, respondent did not file his 1985 tax returns until October 1990, nearly two years after he learned of the problem. The 1986 returns were not filed for another three years, and the 1987

and 1988 returns were not filed until 1994, almost six years after respondent learned of the delinquencies. Judge Chapin noted that "it was never adequately explained why, after learning of the problem, [respondent] did not promptly file tax returns and pay the taxes for each delinquent year, claiming the standard deductions, with the potential of filing amended returns later when the reconstruction of expenses was completed." Furthermore, only the records for the 1985 returns were destroyed, and this information dealt almost entirely with deductions and expense items. We agree with Judge Chapin, and the evidence clearly supports that respondent's failure to take immediate action in correcting the delinquencies amounted to misconduct. Although he undoubtedly desired to take any deductions rightfully permitted under the law for each return, that is no excuse for a general failure to file. Accordingly, we overrule respondent's second exception.

Respondent, in his third exception, asserts that he should not be sanctioned for the misconduct found by Judge Chapin because this conduct, failing to timely cure his tax delinquencies, was not conduct specified by respondent in the Petition For Disciplinary Action and therefore he had no notice and opportunity to defend these charges. We have held that

attorneys charged with misconduct must be afforded the basic elements of due process—notice and the opportunity to defend in a full and fair hearing. Of course, due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin.... The notice to which the attorney is entitled is of the factual allegations against which the attorney must defend.

*Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 444–45, 635 A.2d 1315, 1317 (1994) (citations omitted) (quotations omitted).

■ In this case, petitioner alleged in the Petition for Disciplinary Action that respondent violated the ethical rules by knowingly and willfully failing to file federal and state tax returns and to pay any required taxes for the years 1985,

1986, 1987 and 1988. Accordingly, respondent was required to defend against allegations relating to his failure to file these returns and pay any taxes associated with those returns. Respondent's delay in correcting the delinquencies was linked inextricably with his failure to file the returns and pay the taxes in the first place. For respondent to assert that he had no notice that he would be asked to explain or defend against his continued delay in rectifying the delinquencies while charged as he was in the petition is disingenuous; clearly the allegations charged and the misconduct found to have occurred stem from the same set of facts. We hold, then, that respondent had adequate notice of all the allegations charged against him. Therefore, we overrule respondent's third exception.

### III.

We now must address the appropriate sanction for respondent's misconduct. Respondent contends that no sanction is appropriate in the instant case. Petitioner, on the other hand, argues that respondent should be suspended from the practice of law for two years.

We have stated repeatedly that the purpose of disciplinary proceedings is to protect the public and the integrity of this profession, not to punish the individual offender. *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Goldsborough*, 330 Md. at 364, 624 A.2d at 513. "[T]he public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated." *Myers*, 333 Md. at 447, 635 A.2d at 1318. *See also Breschi*, 340 Md. at 601, 667 A.2d at 665. The severity of the sanction varies with the circumstances of each case and takes into account mitigating factors. *Glenn*, 341 Md. at 484, 671 A.2d at 480; *Powell*, 328 Md. at 300, 614 A.2d at 114.

"One of the most relevant considerations in determining a sanction for failure to file income tax returns is the intention and motive of the respondent." *Breschi*, 340 Md. at

601, 667 A.2d at 665. Because our failure to file cases have dealt with attorneys with deceitful motives and attorneys without such motives, over the years this Court has rendered diverse sanctions. *See id.* at 602, 667 A.2d at 665. Of the cases imposing lengthy suspensions, most of those circumstances involved the attorney's willful failure to file his returns or avoid his taxes initially. *See, e.g., Breschi,* 340 Md. 590, 667 A.2d 659(six months suspension for failure to file 1989 and 1990 returns); *Casalino,* 335 Md. 446, 644 A.2d 43(disbarment for willfully evading income tax due for tax years 1988, 1989, and 1990); *Boyd,* 333 Md. 298, 635 A.2d 382(disbarment for, among other ethical violations, failing to pay withholding taxes and personal income taxes); *Attorney Grievance Comm'n v. Baldwin,* 308 Md. 397, 519 A.2d 1291 (1987)(eighteen months suspension for failure to file returns and other tax reports for various several years). In the case at hand, Judge Chapin concluded, and we agree, that respondent did not evade intentionally his tax obligations in the first instance. His misconduct came about in failing to rectify his problems timely. We believe that the appropriate sanction under the circumstances of this case is a reprimand.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST POWELL DAVID GAVIN.**