785 A.2d 1260

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Richard D. HARRINGTON.

Misc. Docket AG, No. 9, Sept. Term, 2001.

Court of Appeals of Maryland.

Dec. 6, 2001.

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel for Atty. Grievance Com'n of MD, for Petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

The Attorney Grievance Commission ("Commission"), petitioner, by Bar Counsel, filed in this Court a petition seeking disciplinary action against Richard D. Harrington, respondent. The petition alleged multiple violations of the Maryland Rules of Professional Conduct (MRPC). Pursuant to Maryland Rule 16–709, we referred the matter to the Honorable D. William Simpson of the Circuit Court for Wicomico County, for a hearing and to make findings of fact and conclusions of law.

Respondent was served in person with a Petition for Disciplinary Action that required a response within fifteen days of service and notified respondent that a hearing would be held no later than thirty days from the date of response. Respondent failed to file any response. Thereafter, petitioner filed a Request for Order of Default. Judge Simpson entered an Order of Default on June 22, 2001. Respondent did not file a request to vacate the Order of Default. Judge Simpson

proceeded with the hearing and respondent did not appear in court on the date scheduled for the hearing. Subsequently, judgment by default was entered.

Judge Simpson considered the Petition for Disciplinary Action and received the Requests for Admissions of Fact and Genuineness of Documents and Findings of Fact and Conclusions of Law presented by petitioner. Judge Simpson found by clear and convincing evidence that the allegations of fact alleged by petitioner were true, *i.e.,* respondent violated provisions 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(c) and (d) of the MRPC.[1] On August 6, 2001, Judge Simpson adopted the

---

1.  MRPC 1.3 (Diligence) states that "[A] lawyer shall act with reasonable diligence and promptness in representing a client."

    MRPC 1.4 (Communication) provides that:

    "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

    MRPC 1.16 (Declining or terminating representation) provides in relevant part that:

    "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

    MRPC 8.1 (Bar admission and disciplinary matters) provides in relevant part that:

    "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

    . . .

    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

    MRPC 8.4 (Misconduct) provides in relevant part that:

    "It is professional misconduct for a lawyer to:

    . . .

    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

Findings of Fact and Conclusions of Law submitted by petitioner.

## I. Facts

Judge Simpson's findings of fact and conclusions of law are: "[T]his Court [the Circuit Court for Wicomico County] finds the following facts have been established by clear and convincing evidence:

### BC DOCKET NO. 99–615–10–6
### COMPLAINANT: WILLIAM H. MARINER

In or about January, 1998 the Complainant mailed a tax sale certificate with a letter of instructions to the Respondent seeking to employ him to foreclose the rights of redemption which the Complainant had purchased at tax sale. The Complainant had previously employed the Respondent and was prepared, from previous experience, to have paid between $500 and $600 plus advertising costs for the representation.

On January 18, 1999 the Complainant wrote to the Respondent about the foreclosure of the right to redeem. The Complainant had previously made several efforts to contact the attorney, all to no avail. Upon inquiry, prior to the January 18th letter, the Complainant had been assured by Respondent's secretary that the Respondent had completed the title search on the property but had not initiated the appropriate court proceedings or undertaken the necessary advertisements. Within that letter the Complainant asked the Respondent to initiate proceedings within ten days otherwise, if he were unable to timely deal with the matter, the Respondent should return the certificate of tax sale and the Complainant would pay for his time and services. The Complainant requested the Respondent to indicate whether

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice...."

he would either initiate the judicial proceedings or return the tax certificate within the next few days. The Respondent failed to respond. Respondent failed to return the tax certificate.

The owners of the property which was the subject of the tax foreclosure had retained counsel who had sought to redeem the property and, in so doing, sent a check to the Respondent in fulfillment of all financial obligations. The Respondent, at some point in time after the filing of the complaint, forwarded the proceeds to the Complainant.

By complaint dated April 21, 1999 the Complainant brought to the attention of the Petitioner the Respondent's lack of diligence in pursuing the foreclosure of the right of redemption. The Complainant also brought to Petitioner's attention the fact that the original certificate of tax sale, entrusted to the Respondent, had not been returned as requested.

The complaint was forwarded to the Respondent by letter dated April 30, 1999 putting the Respondent on notice that a disciplinary investigation, inquiry file number 99–0–1172, was undertaken to ascertain whether or not the complaint was one that should be formally docketed, or not, as a disciplinary file. The Respondent was requested to respond within fifteen days. He failed to do so.

A certified letter was posted to the Respondent dated May 26, 1999 enclosing the April 30th letter and asking, yet again, for a response within ten days. This letter reminded the Respondent that he was obliged under Maryland Rule of Professional Conduct 8.1 to cooperate in a disciplinary investigation. The return receipt indicated delivery on May 28, 1999 evidenced by a signature of Krista Warfield. The Respondent failed to respond.

Due in major part to his failure to respond to the two previous requests for information, the inquiry file previously numbered 99–0–1172 was formally docketed as a disciplinary complaint against the Respondent bearing BC Docket No. 99–615–10–6. A notice letter was posted to the Respondent dated June 14, 1999 informing him of that action,

enclosing the two earlier letters as well as the original complaint, and asked the Respondent to respond to the substantive allegations of the Complainant and additionally explain his failure to respond to the two earlier requests for information. The Respondent was given fifteen days to respond. He failed to do so.

By certified letter dated July 7, 1999 a second request in BC Docket No. 99–615–10–6 was forwarded to the Respondent with copies of all earlier correspondence. That letter requested a response within ten days, again reminded the Respondent of his obligations under Maryland Rule of Professional Conduct 8.1, and delivery was reflected by the return receipt indicating delivery on July 9, 1999, evidenced by the signature of Krista Warfield. No response was forthcoming.

On July 23, 1999 another letter was forwarded to the Respondent calling to his attention the fact that he had previously ignored four written requests for information. That letter noted an investigator was being assigned to meet with the Respondent but, nonetheless, a written explanation was still expected and required of the Respondent. No response was forthcoming.

On August 27, 1999 Petitioner's investigator attempted to contact the Respondent by telephone and arrange for a meeting. Although the call was placed at 12:51 p.m. the investigator was informed the Respondent had left for the day. A message was left with the secretary indicating the Respondent needed to return the phone call. Respondent returned the phone call on September 1, 1999 and arranged a meeting with the investigator on September 13, 1999.

Petitioner's investigator, in preparation for the meeting with Respondent, and not having the benefit of any input from the Respondent, was obliged to investigate independently the factual contention of the Complainant. The investigator conducted a number of interviews with the Complainant, the Clerk of the Circuit Court for Dorchester County, and the attorney who represented the owner of the

subject premises. The investigator further had to interview a member of the Dorchester County Tax Office.

The Respondent ultimately met with Petitioner's investigator on September 13, 1999 and, during that interview, admitted he received all of the letters forwarded to him by the Petitioner. When asked to produce his file the Respondent replied he 'really did not have a file.'

### BC DOCKET NO. 2000–187–10–6
### COMPLAINANT: PATRICIA R. TAYLOR

In or about 1994 the Complainant retained the Respondent to file suit against another attorney. The original attorney had been employed by the Complainant to prosecute a civil action for damages as a result of a slip and fall in an Acme Market grocery store that had taken place in or about 1990 or 1991. The original attorney had failed to diligently pursue the legal matter and the statute of limitations ran precluding recovery. Although that attorney had offered a cash settlement he properly suggested the client consult with counsel before settling. It was in connection with the settlement for legal malpractice against the original attorney that the Respondent was consulted.

By complaint dated October 4, 1999, the client complained the Respondent had failed to pursue her claim against the original attorney, and was refusing to return her phone calls.

By letter dated October 15, 1999 the Respondent was provided a copy of the original complaint of Ms. Taylor, informed the complaint had been docketed bearing BC Docket Number 2000–187–10–6, and requested that he respond to the allegations in her complaint within fifteen days of the date of that letter. The notice letter to the Respondent pointed out to him his obligations under Maryland Rule of Professional Conduct 8.1. The Respondent failed to respond.

By certified letter dated November 4, 1999 the original complaint and the letter dated October 15th were forwarded

to the Respondent again. This correspondence requested a reply within ten days of the date of the letter and again reminded the Respondent of his obligations under Maryland Rule of Professional Conduct 8.1. The letter was delivered on November 8, 1999 as evidenced by the Respondent's own signature on the return receipt. The Respondent failed to respond.

Petitioner assigned an investigator to initiate the investigation necessary due to Respondent's failure to provide the requested information and response. The investigator attempted to contact the Respondent by telephone on December 1, 1999 and was told Respondent was not in his office. The investigator left a message with the secretary requesting the Respondent return his call and reminding the secretary that the Respondent had a long overdue written response to the complaint in this particular matter. On December 2, 1999 the investigator again attempted to contact the Respondent and was told the Respondent was 'at settlement.' Another message was left requesting the Respondent return the call. No return call was made to the investigator. On December 8, 1999 another attempt by the investigator was made to contact the Respondent by telephone. At that time the secretary informed the investigator the Respondent was on the telephone. After waiting a period of time on hold the secretary informed the investigator that Respondent was still on the telephone at which time the investigator left yet another message for Respondent to call him. The Respondent failed to return that call. Finally on December 16, 1999 the investigator made a last attempt to contact Respondent by telephone. He was informed, again, that the Respondent was on another line. After waiting a reasonable period of time he was told by the secretary that the Respondent was still on the phone and the investigator left yet another message. By letter dated December 16, 1999 the investigator memorialized all of his efforts to contact the Respondent and forwarded that letter to the Respondent with an instruction to provide a written response within ten days of the receipt of that letter. That

letter of December 16th was sent certified mail and was delivered on December 20, 1999 as evidence by the Respondent's own signature on the return receipt. No response was forthcoming.

On December 21, 1999 the investigator again called the Respondent, who took the phone call this time. A meeting was arranged for January 5, 1999. At that meeting the Respondent stated he did not have the file but that he had provided it to the Complainant on some uncertain day earlier. During that meeting the Respondent indicated the Complainant had wanted to receive $25,000 as compensation for the claim against the original attorney.

During the interview with the Respondent the investigator questioned him about an allegation in the complaint that he had received $500. Respondent contended the Complainant first met with him after 1994 but that it was a free consultation and the $500 was for some other matter. Despite his obligation under Rule 1.15(a) to maintain financial records for at least five years after the completion of a legal matter, the Respondent did not have any evidence of the receipt of the $500, nor could he provide documentation for the legal matter, other than the legal malpractice, for which he contended he was retained. During this meeting the Respondent 'promised' that if there were ever another complaint he would respond immediately.

In the follow up interview [with] the Complainant, after meeting with Respondent, it was established the Complainant went to the Respondent's office on December 31, 1999 and obtained her file. During that meeting the Respondent informed the Complainant he was willing to pay her $25,000 to forget the matter. She indicated she refused that offer. During that meeting the Respondent admitted to the Complainant that the original attorney was no longer involved since he, the Respondent, 'let the statute run as far as [the other attorney's legal case] was concerned.' It was in that December 31st meeting that the Respondent said he would have the file ready for her to pick up the following week.

On January 4th, in the company of a friend, the Complainant did obtain her file from the Respondent's office.

The Complainant, during her interview with the investigator, indicated she would have telephone discussions with the Respondent 'a couple of times each year' between the period 1997 and the filing of her complaint. Those discussion[s] were always highlighted by the Respondent indicating that he was 'waiting for a court date.' That was a misrepresentation, Respondent had never initiated the filing of any law suit.

On January 24, 2000 the Respondent paid to the Complainant $35,000 by check on that date drawn against his personal account with the Bank of the Eastern Shore. This was done without the knowledge of, or notice to, the Petitioner. It was not until an inquiry panel was convened to consider the allegations of the Complainant and the intentions of the Respondent on September 27, 2001 that Petitioner was made aware the Complainant did not feel she could give testimony about her complaint due to the financial settlement she reached with the Respondent. During that hearing, it was ascertained the Complainant did not receive a copy of a release or a statement of settlement although she contended she signed a document. As a result, the inquiry panel was unable to substantively question the Complainant about matters to which she complained, and for clarification of matters about which the Respondent offered testimony.

## BC DOCKET NO. 2001–23–10–6

## COMPLAINANT: COLLEEN CURRAN BROMWELL

By complaint dated May 22, 2000 Petitioner was notified of the Complainant's efforts to obtain funds in payment of a funeral bill where the Respondent had met with her and stated simply that she would be paid in time. The Complainant contended the Maryland State Board of Morticians required a signed contract for the funeral, which the Respondent refused to execute, but more importantly, she

complained the Respondent had not remitted an outstanding bill for services that went back to August 11, 1999.

By letter dated May 26, 2000 Petitioner sought information from the Respondent in inquiry file number 2000–0–1337. Within that letter the Respondent was placed on notice that Petitioner '... must determine, initially, whether this matter should be classified as a formal docketed complaint or is one which is not, in [Petitioner's] opinion, disciplinary in nature.' The Respondent was asked to provide his response to the allegations in writing to enable petitioner to 'make this decision.' The Respondent was given fifteen days to respond. He failed to do so.

By certified letter dated June 21, 2000 the Respondent was provided an additional copy of the earlier May 26th correspondence and the original complaint. He was asked to respond within ten days. Delivery was evidenced to have taken place on June 23, 2000 indicated by the signature of Heather R. Wittstadt on the return receipt. No response was forthcoming.

Thereafter on July 17, 2000 the matter, previously dealt with as an inquiry file, was docketed due in major part to Respondent's failure to provide the information requested. The matter was docketed as BC Docket Number 2001–23–10–6 and the Respondent was notified of that activity by letter dated July 17, 2000. Respondent was provided with a copy of all earlier correspondence, including the original complaint, asked to provide his response within fifteen days of that letter, and additionally provide a response or explanation as to why he had failed to respond to the two previous requests in the inquiry file.

A second written request for information was sent certified mail by letter dated August 7, 2000, in the docketed file. The Respondent was again reminded of his obligation under Maryland Rule of Professional Conduct 8.1 and given ten days to respond. He was provided with all previously indicated requests, and the original complaint. The delivery of that certified letter was verified by the signature of

Krista Warfield on the return receipt evidencing delivery on August 9, 2000. The Respondent failed to respond.

An inquiry panel was convened to consider the allegations of the Complainant and the conduct of the Respondent on September 27, 2000. During that hearing, necessitated by Respondent's failure to respond to the numerous requests for information by a disciplinary agency, it was ascertained the underlying allegation of misconduct did not constitute a disciplinary matter.

*Based upon the above Findings of Fact this Court*[2] *concludes the Respondent, in each separate matter as set forth below, violated the following Maryland Rules of Professional Conduct then in effect:*

*In BC Docket No. 99–615–10–6, where the Complainant is William H. Mariner, the Court finds* the Respondent violated Maryland Rules of Professional Conduct 1.3 by his failure to diligently pursue the legal matter which he undertook on behalf of his client and Rule 1.4(a)(b) for failing to promptly comply with reasonable requests for information about a legal matter by a client and failing to fully and truthfully explain his actions, or more accurately in this case inaction, to permit the client to make informed decisions regarding the representation. Further, the Court concludes the Respondent violated Maryland Rule of Professional Conduct 1.16(d) by effectively terminating the representation of Mr. Mariner but failing to take such steps to reasonably protect his client's interest, such as giving his client notice of his termination of representation, surrendering papers and property to which the client is entitled, and further the Court concludes the Respondent violated Maryland Rule of Professional Conduct 8.1(b) by his failure to respond to a lawful demand for information from a disciplinary authority in connection with the investigation of the complaint of Mr. Mariner. The Court concludes these violations, particularly the Respondent's failure to partici-

---

2. Judge Simpson was acting as a hearing officer for this Court under our jurisdiction.

pate in the disciplinary investigation, constitutes violations of Maryland Rule of Professional Conduct 8.4(d) as conduct prejudicial to the administration of justice.

*In BC Docket No. 2000–187–10–6, where the Complainant is Patricia R. Taylor, the Court finds, and does conclude,* the Respondent violated Maryland Rules of Professional Conduct 1.3 by his failure to diligently pursue the legal malpractice case of his client, and in violation of Rule 1.4(a)(b) failed to keep his client reasonably informed about the status of her legal matter and his failure to promptly respond to reasonable requests for information by the client as well as his failure to explain his actions, or more appropriately in this matter, inactions, so as to permit the client to make informed decisions regarding the representation. The Court further finds the Respondent violated Maryland Rule of Professional Conduct 8.1(b) by his failure to respond to lawful demands for information in connection with a disciplinary investigation and that the Respondent violated Maryland Rule of Professional Conduct 8.4(c) by committing professional misconduct when he engaged in dishonesty, deceit and misrepresentation by leading his client to believe he had filed a law suit on her behalf, when in fact he had not, and accounted for the delay because he was 'waiting for a court date.' Further, the Court finds the Respondent's misconduct as set forth herein, and particularly his persistent failure to [cooperate] with a disciplinary investigation, constitutes a violation of Maryland Rule of Professional Conduct 8.4(d) as conduct prejudicial to the administration of justice.

*Finally the Court concludes that in BC Docket No. 2001– 23–10–6, where the Complainant is Colleen Curran–Bromwell,* the Respondent violated Maryland Rule of Professional Conduct 8.1(b) by his apparently habitual failure to assist and cooperate with a disciplinary investigation and, by that failure, he violated Maryland Rule of Professional Conduct 8.4(d) as committing conduct that is prejudicial to the administration of justice." [Emphasis added.] [Some alterations added.]

## II. Standard of Review

This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709(b); *Attorney Grievance Comm'n v. Gavin*, 350 Md. 176, 189, 711 A.2d 193, 200 (1998); *Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent*, 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 287, 614 A.2d 102, 108 (1992). The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough*, 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Accordingly, this Court has the ultimate authority to decide whether a lawyer has violated the professional rules. *Garland*, 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

No exceptions to Judge Simpson's findings have been filed. Accordingly, Judge Simpson's factual findings are accepted.

We further hold that Judge Simpson's conclusions of law are supported by those findings. As to the conclusions of law of a judge, to whom we have assigned hearing duties in an attorney grievance case, our consideration is essentially *de novo*, even where default orders and judgments have been entered at the hearing level. *See, e.g., Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 646, 732 A.2d 876, 881 (1999) ("This Court has original and complete jurisdiction over attorney disciplinary proceedings. Accordingly, the ultimate decision as to whether a lawyer has violated the [MRPC] rests with this Court." (citations omitted)).

Judge Simpson, in addition to finding that the respondent had violated various other provisions of the MRPC, also found that respondent had failed to cooperate with Bar Counsel and petitioner in its investigation of his alleged violations. We hold from these undisputed factual findings of Judge

Simpson that respondent has violated the provisions of MRPC 8.1(b), which provides that an attorney must not "knowingly fail to respond to a lawful demand for information from a[ ] ... disciplinary authority." *See Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 287, 725 A.2d 1069 (1999) (holding that repeated failures to answer Bar Counsel's requests for information violated MRPC 8.1(b)).  There is a solid body of case law from this Court, with facts, similar to the case *sub judice,* wherein an attorney's violation of various other provisions of the MRPC coupled with a violation of MRPC 8.1, led us to hold the proper sanction to be suspension of the attorney.

In *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 753 A.2d 17 (2000), we found that an attorney violated several MRPC, including 8.1.  In *Mooney,* the various violations and the attorney's serious lack of communication resulted in an indefinite suspension with permission to reapply after ninety days subject to the attorney engaging a monitor acceptable to Bar Counsel.

In *Brown, supra,* an attorney violated, among other rules, MRPC 1.4, 8.1, and 8.4.  We held that the numerous ethical violations, despite the attorney's attempt to mitigate the circumstances, warranted an indefinite suspension with a right to reapply in one year.

In *Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 709 A.2d 1212 (1998), the grievance arose out of three separate complaints filed against the attorney.  We determined that the attorney had violated numerous MRPC, including 8.1, by his refusal to respond to the Attorney Grievance Commission, and held an indefinite suspension with the right to apply for readmission after two years proper.

In *Attorney Grievance Comm'n v. David,* 331 Md. 317, 323–24, 628 A.2d 178, 181 (1993), we suspended an attorney indefinitely from the practice of law because, among other violations, the attorney's representation of four clients was marked by serious neglect and inattention.  In addition, he had violated MRPC 8.1 due to his failure to answer Bar Counsel's requests for information in connection with the

investigation of three of the complaints. In *David*, we granted the attorney the right to apply for reinstatement after the suspension had been in effect for six months.

Respondent has demonstrated like conduct, via his flagrant disregard of and response to communications from Bar Counsel, coupled with the various other MRPC violations. In sum, respondent not only violated MRPC 8.1(b), but also MRPC 1.3, 1.4(a) and (b), 1.16(d), and 8.4(c) and (d). Consistent with *Mooney*, *Brown*, *Alison*, and *David*, we hold an indefinite suspension to be the appropriate remedy.

### III. Suspension

We have stated repeatedly that the purpose of disciplinary proceedings is to deter future ethical violations and to protect the public and the integrity of this profession, not to punish the individual offender. *Attorney Grievance Comm'n v. Hess*, 352 Md. 438, 453, 722 A.2d 905, 913 (1999); *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Attorney Grievance Comm'n v. Goldsborough*, 330 Md. 342, 364, 624 A.2d 503, 513 (1993). "[T]he public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated." *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994); *see also Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995). The severity of the sanction varies with the circumstances of each case and takes into account the mitigating factors. *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 300, 614 A.2d 102, 114 (1992).

Since the beginning, when the first of the three complaints was filed against him, respondent has consistently failed to cooperate with Bar Counsel and has not presented anything in mitigation or any exceptions to the trial judge's ruling. We determine that the appropriate sanction, in line with the body of case law stated above, is an indefinite suspension to commence thirty days from the date of the filing of this Opinion.

IT IS ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST RICHARD D. HARRINGTON.

RAKER, Judge, dissenting.

Respondent should be disbarred. He has violated Rules 8.1(b), 1.3, 1.4(a) and (b), 1.16(d), and 8.4(c) and (d) of the Maryland Rules of Professional Conduct (MRPC). Particularly disturbing is his violation of MRPC 8.4 (Misconduct), which reads, in pertinent part, as follows:

"It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice."

In the matter related to complainant Patricia R. Taylor, respondent engaged in dishonest and deceitful conduct when he misrepresented his actions to his client by stating that he was "waiting for a court date" when, in fact, he had never even filed the cause of action on her behalf.

With the exception of *Attorney Grievance v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999), the cases cited by the majority as support for the sanction should not be considered as guidance by this Court because the respondents in those cases had not been found to have engaged in dishonest or deceitful conduct. In fact, in *Attorney Grievance v. Mooney,* 359 Md. 56, 753 A.2d 17 (2000), the Court granted respondent's exception to the hearing court's finding that he intentionally made misleading statements, stating that "in order to establish its case against respondent, Bar Counsel is required to prove with clear and convincing evidence that respondent's supposed false statements were made with the knowledge that such

statements were false when he made them." *Id.* at 79, 753 A.2d at 33.

In contrast, Harrington was deceitful and dishonest. An attorney who is dishonest and deceitful should not be practicing law. Accordingly, I respectfully dissent.