*Attorney Grievance Commission v. Charles Darrow Yates*
Misc. Docket AG No. 53, September Term 2018


**Attorney Discipline – Willful Failure to File Tax Returns and Pay Taxes – Suspension**.
An attorney who failed to timely file State and federal income tax returns over an extended
period of time and to timely pay taxes that would be due with respect to those returns
committed misconduct involving (1) a criminal act that reflected adversely on the
attorney's fitness as an attorney; (2) dishonesty; and (3) conduct prejudicial to the
administration of justice. Such misconduct merited a suspension from the practice of law.
In light of several mitigating factors, including his cooperation with Bar Counsel, his good
faith efforts to rectify his misconduct, his payment of most of the back taxes, interest and
penalties owed, his remorse, and his otherwise good character and reputation as an
attorney, a 60-day suspension is the appropriate sanction. As a condition for reinstatement,
the attorney must provide confirmation that he is current on required tax filings and on his
payment plans for the remaining back taxes with the IRS and the Comptroller. Maryland
Attorneys' Rules of Professional Conduct, 19-308.4(a)-(d) (formerly Maryland Lawyers'
Rules of Professional Conduct 8.4(a)-(d)); Maryland Rules 19-742(e), 19-752(j)(11).

Circuit Court for Carroll County
Case No. C-06-CV-19-000038
Argument: January 6, 2020

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket No. AG 53

September Term, 2018

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

V.

CHARLES DARROW YATES

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Booth
Biran
Battaglia, Lynne A.
(Senior Judge, Specially
Assigned),

JJ.

_____

Opinion by McDonald, J.
Watts, J., dissents.
_____

Filed: February 28, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In 1789, Benjamin Franklin saluted the new United States Constitution with the observation that "everything seems to promise it will be durable; but, in this world, nothing is certain except death and taxes."[1]  The certainty of taxes makes it among the best known legal and civic obligations.  As "an officer of the legal system,"[2] an attorney has a special responsibility to comply with such an obligation.

Respondent Charles Darrow Yates by all accounts has been a well-respected attorney who has primarily practiced immigration law.  Fifteen years ago, he and his wife purchased a farm in Carroll County with the intention that he would leave the practice of law and that they would devote themselves to the business of raising pure bred horses.  That plan apparently went awry for several reasons, including the general economic downturn during the Great Recession, a decline in the market for pure bred horses, and his wife's multiple serious health issues.  As a result, Mr. Yates returned to the practice of law while simultaneously attempting to operate the farm on his own for approximately seven years.  In the meantime, he stopped filing timely income tax returns and paying taxes that would be due.

Although not directly related to the practice of law, an attorney's willful failure to file income tax returns and timely pay the tax due violates the rules of professional conduct.  As a sanction, we suspend Mr. Yates from the practice of law.  In light of various mitigating

---

[1] National Constitution Center, *Benjamin Franklin's last great quote and the Constitution* (November 13, 2019), available at https://perma.cc/83G4-3TRS.

[2] Maryland Rule 19-300.1(1).

factors, including Mr. Yates' disclosure of his tax delinquency to Bar Counsel, his significant efforts to file returns and pay all back taxes, interest, and penalties, his remorse, and his otherwise good character and reputation, the suspension shall be 60 days. As a special condition for reinstatement, he must provide Bar Counsel with confirmation that he is current on required tax filings and, to the extent that any past tax liability remains, that he is current on payment plans with the Internal Revenue Service and the Maryland Comptroller to eliminate that liability.

# I

# Background

## A.  *Procedural Context*

On January 16, 2019, the Attorney Grievance Commission, through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Mr. Yates, alleging that he had failed to file timely State and federal income tax returns and to pay income tax for tax years 2011 through 2017 inclusive and thereby violated Rule 8.4(a)-(d) (Misconduct) of the ethical rules governing lawyers in Maryland.[3]  Pursuant to Rule 19-722(a), we designated

---

[3] During much of the period relevant to this case, the ethical rules governing attorneys were entitled the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and were codified in an appendix to Maryland Rule 16-812. Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified in Title 19 of the Maryland Rules with the term "attorney" substituted for the term "lawyer." *See* Maryland Rules 19-300.1 *et seq.* For simplicity, in this opinion we shall use the shorter designations of the MLRPC – *e.g.,* "Rule 8.4" rather than "Maryland Rule 19-308.4."

Judge Thomas F. Stansfield of the Circuit Court for Carroll County to conduct a hearing concerning the alleged violations and to provide findings of fact and conclusions of law.

The hearing judge conducted an evidentiary hearing in July 2019 and, on August 29, 2019, issued an opinion containing his findings of fact and conclusions of law.[4] The hearing judge concluded that there was clear and convincing evidence that Mr. Yates violated Rule 8.4(a) & (d), but not that Mr. Yates had violated Rule 8.4(b) & (c). The hearing judge also made findings of fact related to aggravating and mitigating circumstances for this Court's consideration in devising an appropriate sanction.

Mr. Yates did not except to any of the hearing judge's findings or conclusions. Bar Counsel excepted to the hearing judge's conclusion that Mr. Yates had not violated Rule 8.4(b) & (c) and to one of the hearing judge's fact findings concerning mitigation. On January 6, 2020, we heard oral argument concerning those exceptions and the parties' recommendations as to an appropriate sanction.

## B.    *Facts*

At the evidentiary hearing in this case, the parties submitted various documentary exhibits by stipulation. Mr. Yates and his wife testified on his behalf. Mr. Yates also

---

[4] Shortly before the hearing in the Circuit Court, Bar Counsel sought to amend the Petition for Disciplinary or Remedial Action to allege that Mr. Yates also failed to file returns with respect to tax years 2005 and 2009 and also failed to pay taxes with respect to those tax years and tax year 2018. Amendment of the petition required leave of this Court pursuant to Maryland Rules 19-725(b) and 2-431(a). Mr. Yates opposed the motion, which was later denied as moot after the hearing went forward as scheduled. In any event, evidence of Mr. Yates' failure to file in other years may be considered as evidence of his knowledge and intent, even if not formally part of the charges of misconduct. *See* Maryland Rule 5-404(b).

3

presented the testimony of his former accountant, two character witnesses, and a clinical psychologist who had diagnosed him as suffering from an attention deficit disorder. We summarize below the hearing judge's findings of fact and other undisputed matters in the record, as they relate to the alleged violations.

1.      Education and Early Legal Career

Mr. Yates is 60 years old. He grew up in Wiltz, Luxembourg, and in New Jersey. In 1982, he graduated from Stevens Institute in Hoboken, New Jersey, with a B.S. in chemistry. In 1988, he received a J.D. from Western New England College School of Law, and was admitted to the Massachusetts Bar later that same year. Mr. Yates was admitted to the Maryland Bar in 1989.

Shortly after he became an attorney, Mr. Yates began volunteering with a pro bono project sponsored by a bar association in which he represented immigration clients seeking asylum in the United States. As a result, he became interested in immigration law and, in September 1990, opened a private practice in Maryland devoted to that area of the law. The practice grew and, at its height during the next decade, he had a staff of seven to 10 employees, including a bookkeeper. During that period, he retained a certified public accountant to assist with the preparation and filing of his tax returns.

2.      Transition from Law Practice to Horse Farm

According to Mr. Yates, he began to lose his zeal for his law practice during the early 2000s. He cited a number of factors: changes in immigration law and the flow of immigrants from Central America that affected the practice, the sudden death of a psychiatrist who was treating him for attention deficit disorder, and a fall from a horse that

resulted in a significant concussion and memory loss. He also noted that, in 2003, he had missed a significant deadline in an immigration case with adverse consequences for the client – an incident for which he later agreed to a reprimand by this Court. *See Attorney Grievance Comm'n v. Yates*, 391 Md. 287 (2006).

According to Mr. Yates, he became concerned that he would be placing clients at risk and reassessed his career path. In 2004, he and his wife, Susan Yates, purchased an 83-acre farm in Carroll County which they called the Tully Cross Farm and where they planned to raise prize-winning Irish Draught horses, sheep, goats, and other livestock. After discussing his future in the legal profession with an immigration judge whom he regarded as a mentor, Mr. Yates transitioned his remaining clients to other counsel and closed his law firm in June 2005.

Neither Mr. Yates nor his wife had prior experience in operating a farm. His accountant opined, in retrospect, that Mr. Yates did not understand the risks involved in entering the pure bred horse industry.

3.      Hard Times and Return to Law Practice

Mr. Yates' wife had planned to continue to earn income as a nurse while she assisted Mr. Yates with the farm. However, she soon encountered several very serious health issues. By May 2010, her declining health prevented her from contributing to the household income and assisting with the farm as they had planned. She stopped driving for two and a half years, relying on Mr. Yates for transportation to doctor's appointments and elsewhere. At the same time, according to Mr. Yates, the 2008 recession had gutted the market for pure bred foals, eliminating their main source of revenue from the farm.

In response to this financial distress, Mr. Yates laid off the employees of the farm, including its part-time bookkeeper, and attempted to do the work himself. He also returned to the practice of law in September 2010 to generate some income. He developed a niche practice of "standing in" for other counsel in immigration court. However, his court obligations made it difficult for him to also operate the farm. According to Mr. Yates, his days often began at 5 a.m. and lasted until midnight in order to do what needed to be done to tend to the farm and livestock – more than 30 horses and hundreds of sheep – while spending the middle of the day at immigration court.

4.    Failure to File Returns and Pay Taxes

Mr. Yates failed to file income tax returns for most of the decade during which he simultaneously operated the farm and practiced law. During that period, Mr. Yates made some payments toward his tax liabilities, before his tax delinquency came to the attention of Bar Counsel. Mr. Yates testified that he sent $7,500 to the IRS along with a request for an extension in 2015,[5] and entered into a payment plan with the Comptroller under which he made monthly payments of approximately $900 per month. Otherwise, he and his wife did not make tax filings or pay federal or State income tax for the period 2011-2017, inclusive – the period charged in the Petition for Disciplinary or Remedial Action.[6] Mr.

---

[5] According to Mr. Yates' accountant, that amount considerably exceeded the couple's tax liability for the previous year.

[6] Summary charts of Mr. Yates' tax liability and payments, which were admitted into evidence by stipulation, indicate that Mr. Yates had no tax liability to the State for tax years 2010, 2011, and 2012.

Yates eventually filed late returns for those tax years during the summer of 2018. Bar Counsel also introduced evidence that Mr. Yates had failed to file returns and timely pay income taxes for the 2009 tax year.

5. Disclosure of Tax Issues to Bar Counsel during Deposition

In the meantime, one of the immigration attorneys for whom Mr. Yates functioned as substitute counsel came under investigation by Bar Counsel for neglect of some of her clients. Mr. Yates appeared as a witness in the matter. *See Attorney Grievance Comm'n v. Aita*, 458 Md. 101, 111, 115, 117 (2018). In June 2017, Mr. Yates was deposed by Bar Counsel in connection with that matter. In response to routine questions concerning his own involvement in litigation, he disclosed that he was "slightly behind in filing tax returns" because his records were "a mess."

That disclosure prompted a further investigation of Mr. Yates' tax situation. It also apparently prompted him to finally come to grips with his tax obligations.

6. Catching up on Tax Obligations

According to Mr. Yates and his accountant, he did not have complete records of the expenses of running the farm for the period subsequent to 2010 after he had laid off his bookkeeper. On the advice of the accountant, he declared Tully Cross Farm to be a "hobby" and as a result, under IRS rules, he was able to file overdue returns during the summer of 2018 without trying to account for all farm expenses. According to the accountant, this approach also limited the extent to which losses incurred in operating the farm could be set off against his other sources of income.

As a result of the delay in filing returns and paying taxes, Mr. Yates and his wife became liable for significant interest and penalties in addition to their tax liability. According to the accountant, the interest and penalties accounted for "at least 50 percent" of their total liability. Mr. Yates testified that, if he had maintained more complete records of farm expenses, he and his wife may well have been able to offset all of their income with those expenses for the years before 2015 and would have incurred no income tax liability for that period – an opinion with which his accountant appeared to agree.

7.    Selling the Farm and Paying Overdue Taxes

Mr. Yates and his wife initially tried to sell the farm in June 2014, when they placed it on the market for six months. However, they did not receive any offers and did not sell it at that time.

According to Susan Yates, the market had improved by 2018, when they were desperate to sell the farm and rectify their tax situation. She testified that they accepted the first offer that they received at a price that was less than they had paid for the farm, with the result that they did not recoup the cost of various improvements they had made to the property.

The sale of the farm closed on January 31, 2019. The couple was thereby able to avoid foreclosure, to satisfy most of their tax liability, and to arrange new payment plans to discharge the rest of that liability.[7] Mr. Yates also hired a bookkeeper to assist with his

---

[7] The payment plan with the IRS was for a balance of $39,864.88 relating to the 2018 tax year; the payment plan with the Maryland Comptroller was for a balance of $14,086.83, relating to prior tax years.

financial records and retained his accountant to sort out the couple's tax situation. Mr. Yates has testified that he believes that the income generated from his law practice will allow the couple to complete their payment plans and become current on their tax liability within the next few years. According to their accountant, they are also seeking a retroactive abatement of the tax penalties that were incurred.

8. Expert Testimony concerning Mr. Yates' Mental Condition

Stanley Sack, a board-certified clinical psychologist whom Mr. Yates began seeing in July 2018 on a referral by Mr. Yates' treating psychiatrist, testified on Mr. Yates' behalf. Dr. Sack reported that Mr. Yates had been diagnosed with attention deficit disorder in 2000, which Dr. Sack characterized as a "disorder of the executive function." Dr. Sack confirmed that he had made the same diagnosis of Mr. Yates. Dr. Sack said that, underlying the attention deficit disorder, was "inconsistent decision making and inconsistent planning." He said that people with such a disorder feel overwhelmed and rely on "the emergency of the moment" that "galvanizes them into action." Dr. Sack also testified, with less elaboration, that Mr. Yates suffers from executive function deficit and an adjustment disorder. Dr. Sack said that an executive function deficit impairs one's ability "to manage a task."

Dr. Sack testified that treatment of Mr. Yates' disorder involved three "pillars" − medication prescribed by Mr. Yates' psychiatrist, periodic meetings with Dr. Sack involving cognitive behavioral therapy, and engaging a bookkeeper to assist with "disciplined execution" of the tasks necessary to do tax filings. On cross-examination, Dr. Sack said that he was not aware of any incidents in which Mr. Yates' disorders had affected

his law practice or dealings with clients and stated that Mr. Yates' condition was not "completely debilitating."

Bar Counsel conceded that Mr. Yates suffers from the disability with which he has been diagnosed, but disputed that it was a substantial cause of his misconduct.

9. Evidence of Mr. Yates' Character and Reputation

Five of Mr. Yates' colleagues who practice immigration law vouched for his character and reputation, two in live testimony and three by affidavit.

Abdoul Konare left the Washington, D.C., office of a large New York firm in 2012 to start a solo immigration practice. Mr. Yates was one of the first lawyers he met at the immigration court in Baltimore. Mr. Konare, who appeared to regard Mr. Yates as a mentor, testified that Mr. Yates had given him "the best advice ever" on how to operate an immigration practice. Mr. Konare's practice grew and the firm employed a staff of 30 people. Mr. Konare would call upon Mr. Yates frequently to act as "stand-in" counsel for his clients when a scheduling conflict that precluded Mr. Konare's appearance might delay the client's case. He said that Mr. Yates was greatly respected by the clients, the immigration judges, and other attorneys and staff at the court.

Roberto Allen testified to a similar relationship with Mr. Yates. Mr. Allen, who had worked in large law firms in Baltimore and as in-house corporate counsel, had set up a small immigration and consumer bankruptcy practice. He described Mr. Yates as a "fixture" at the immigration court and a "valuable resource" whom he frequently consulted for advice. Like Mr. Konare, he used Mr. Yates as stand-in counsel when scheduling conflicts at the immigration court threatened to disadvantage his clients by delaying a

proceeding. Also like Mr. Konare, he attested to Mr. Yates' reliability and competence, and the high regard that clients, judges, and court staff had for Mr. Yates.

On cross-examination, both attorneys reported that Mr. Yates, who acted as the stand-in counsel without support staff, was well prepared, organized, and reliable in handling assignments, and sent them timely and accurate bills for his services.

Affidavits from three other experienced immigration practitioners provided similar encomiums, praising Mr. Yates' honesty, trustworthiness, preparation, and reliability. One described him as the immigration court's "pro bono attorney" who is "genuinely respected" by the immigration judges. All of the attorneys who provided testimony and affidavits lauded Mr. Yates' generosity to those he encountered in the immigration court in need of assistance of any kind.

## II

### Violations of the Rules of Professional Conduct

In the Petition for Disciplinary or Remedial Action, the Commission charged Mr. Yates with violating four sections of Rule 8.4, which defines various kinds of attorney misconduct. The hearing judge concluded that Mr. Yates' failure to timely file income tax returns and pay taxes violated two of those sections, but did not violate the other two sections. For the reasons explained below, we conclude that the misconduct violated all four sections.

## A.    *Rule 8.4(a)*

Rule 8.4(a) provides that it is professional misconduct to "violate or attempt to violate the [rules of professional conduct], knowingly assist or induce another to do so, or do so through the acts of another."

As set forth below, we conclude that Mr. Yates violated other sections of Rule 8.4. We thus agree with the hearing judge that, as a consequence, Mr. Yates also violated Rule 8.4(a).[8]

## B.    *Rule 8.4(b)*

Rule 8.4(b) provides that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects."

The Commission alleged, in the Petition for Disciplinary or Remedial Action, that Mr. Yates knowingly failed to timely file federal and State income tax returns and failed to pay taxes related to those returns for multiple years.  Although the Petition does not cite a particular criminal statute, these allegations clearly implicate the federal and State statutes

---

[8] Insofar as we find a violation of Rule 8.4(a) based solely on a violation of another rule, it is simply an echo of the other violation that has no independent effect on the sanction we impose and arguably is not worthy of the several sentences devoted to it in the text and footnote of this opinion.  *See Iowa Supreme Court Attorney Disciplinary Board v. Templeton*, 784 N.W.2d 761, 769 (2010) (violation of Iowa version of Rule 8.4(a) not considered a separate violation for purposes of determining sanction).

To the extent that an alleged violation of Rule 8.4(a) is based on an attempt, assisting a violation by another, or committing a violation through another, it may carry some independent weight in the determination of a sanction.  *See* Ellen J. Bennett & Helen W. Gunnarsson, Annotated Model Rules of Professional Conduct (9th ed. 2019) at 706-7.

that define the crime commonly referred to as "willful failure to file." In particular, under

26 U.S.C. §7203:

> Any person required under [the Internal Revenue Code] to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations [is guilty of a misdemeanor].

Similarly, under State law, a person commits a misdemeanor if "[a] person who is required

to file an income tax return … willfully fails to file the return as required [by the State

income tax law]." Maryland Code, Tax-General Article, §13-1001(d). "Willful," in the

context of a willful failure to file taxes, means a voluntary, intentional violation of a known

legal duty and does not require a showing of a deceitful or fraudulent motive. *Attorney*

*Grievance Comm'n v. Tayback*, 378 Md. 578, 589 (2003); *see also United States v.*

*Pomponio*, 429 U.S. 10, 12-13 (1976) (per curiam) (meaning of "willful" in federal

criminal tax statutes).

Mr. Yates has not been charged with, or convicted of, either the State or federal

offense of willful failure to file. However, it is not a prerequisite to a finding of a violation

of Rule 8.4(b) that the attorney have been charged with, or convicted of, a violation of the

criminal statute. *See, e.g., Attorney Grievance Comm'n v. Katz*, 443 Md. 389, 403-7

(2015); *Attorney Grievance Comm'n v. Worsham*, 441 Md. 105, 129 (2014); *Attorney*

*Grievance Comm'n v. Atkinson*, 357 Md. 646, 655-56 (2000). Those with responsibility

for prosecuting criminal offenses may, in exercising prosecutorial discretion, elect not to

charge a criminal violation even if there is more than sufficient evidence of a violation, for

a variety of sound public policy reasons. To establish a violation of Rule 8.4(b), there need only be clear and convincing evidence of a criminal act.

Here, it is evident that the elements of willful failure to file were established by clear and convincing evidence. During his testimony, Mr. Yates admitted that, during the period in question, he was always aware of his obligation to file income tax returns and pay income taxes, yet did not do so. While he presented testimony that he suffered from attention deficit and related disorders, it is apparent from the accolades he received from colleagues at the immigration bar that his niche practice of substituting for other attorneys required both preparation and punctuality – that is, he had to prepare for a proceeding, sometimes on limited notice, and appear for that proceeding on time. He was also able to manage the operation of a farm with 38 horses, hundreds of sheep, and other livestock, at times on his own. He simply set a lower priority on carrying out his civic responsibility to file returns and pay taxes – a legal obligation that he was admittedly well acquainted with. There is no question that the element of willfulness was established, as his counsel necessarily conceded at oral argument.

Willful failure to file is quintessentially a criminal act that reflects adversely on an attorney's fitness as an attorney. Part of the commentary that accompanies Rule 8.4(b) specifically alludes to willful failure to file as the kind of offense that triggers a violation of the rule. *See* Maryland Rule 19-308.4, *Comment [2]* ("Many kinds of illegal conduct reflect adversely on fitness to practice law, such as … the offense of willful failure to file an income tax return."). Indeed, willful failure to file offenses underlie a significant proportion of those cases in recent years in which this Court has found a violation of Rule

8.4(b).  *See, e.g., Attorney Grievance Comm'n v. Gianetti*, 456 Md. 465 (2017); *Tayback*, 378 Md. at 586-90; *Atkinson*, 357 Md. at 654-55.

Mr. Yates' counsel argued that, even if the elements of the crime of willful failure to file are established, such conduct violates Rule 8.4(b) only if done with the sort of fraudulent or dishonest intent that renders the crime one of "moral turpitude" – a phrase that once appeared in the disciplinary rules governing attorneys.[9]  The distinction as to offenses involving "moral turpitude," which once might have affected the choice of sanction,[10] is not determinative as to whether the conduct violates Rule 8.4(b).  This Court has stated that "moral turpitude is no longer a factor in disciplinary proceedings … a lawyer's commission of a crime or conduct enumerated in Rule 8.4 will subject the lawyer

---

[9] From at least 1929 through 1977, a statute concerning the regulation of the legal profession provided for the suspension or disbarment of any attorney found to have committed a "crime involving moral turpitude," among other things.  *See* Chapter 370, §2, Laws of Maryland 1929 (adding Maryland Code, Article 10, §10E, *later recodified as* Maryland Code, Article 10, §16).  Similarly, a disciplinary rule adopted by this Court in 1970 based upon a model developed by the American Bar Association referred to "illegal conduct involving moral turpitude" as a basis for attorney discipline.  *See Maryland State Bar Ass'n v. Agnew*, 271 Md. 543, 546-47 & n.4 (1974); *see also*  Rule 19-308.4 [Comment (2)].

[10] Mr. Yates' counsel cited *Attorney Grievance Comm'n v. Walman,* 280 Md. 453 (1977) for the proposition that a willful failure to file offense may, in some circumstances, not be a crime of moral turpitude.  In that case, which was decided under a prior version of the ethical rules, this Court distinguished between a willful failure to file that involved moral turpitude – which the Court said would result in disbarment – from a willful failure to file which did not involve moral turpitude – which might merit a lesser sanction.  The Court held that the case before it, in which the attorney had pled guilty in federal court to willful failure to file one year's tax return, fell into the latter category and accordingly did not disbar the attorney, but rather suspended him for three years.  *Compare Attorney Grievance Comm'n v. Barnes*, 286 Md. 474 (1979) (distinguishing *Walman* and concluding that attorney's failure to file offense involved moral turpitude and merited disbarment).

to discipline irrespective of whether the crime is also one of moral turpitude." *Attorney Grievance Comm'n v. Casalino*, 335 Md. 446, 451 (1994).

Mr. Yates also relies on this Court's decision in *Attorney Grievance Comm'n v. Kane*, 465 Md. 667, 721-26 (2019), in which the Court concluded that there was not clear and convincing evidence that an attorney's deduction of certain cell phone and internet expenses on his income tax return established a violation of a criminal statute (26 U.S.C. §7206(1)) that prohibits the filing of a willfully false tax return that the taxpayer does not believe to be true as to every material matter. In contrast, this case is simpler and more straightforward. There is no need to establish Mr. Yates' understanding of specific provisions of the tax laws, the materiality of information provided on a return, or the accuracy of the information on a return. It is undisputed that Mr. Yates was well aware of his legal obligation to timely file income tax returns and to timely pay any income tax owed, and that he did not file returns or pay most taxes owed during a seven-year period.

There is no doubt much that can be said about Mr. Yates that might engender sympathy, or even admiration, and that distinguishes him from other tax delinquents, but that is a matter to be considered in devising the sanction. The violation of Rule 8.4(b) was proven by clear and convincing evidence.[11]

---

[11] We thus sustain Bar Counsel's exception in this regard. The hearing judge apparently did not consider whether the evidence established a willful failure to file violation, but focused on the separate crime of tax evasion, although the proposed findings submitted by Bar Counsel made reference only to the willful failure to file statutes, not the tax evasion statutes. In addition, the hearing judge applied a standard of willfulness – "evil motive or other malevolent purpose" – that is not required to establish the offense of willful failure to file.

*C.*     ***Rule 8.4(c)***

Rule 8.4(c) provides that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

This Court has held that the failure to file timely tax returns and pay taxes due over an extended period of time is dishonest conduct proscribed by Rule 8.4(c). *Gianetti*, 456 Md. at 474 (failure to file returns and pay taxes over a seven-year period); *Tayback,* 378 Md. at 591-92 (failure to timely file returns and pay taxes over a seven-year period); *Atkinson*, 357 Md. at 655 (failure to file returns and pay taxes for more than a decade). Even if Mr. Yates did not intend to commit fraud or make an affirmative misrepresentation to the tax authorities, he admittedly hoped that his delinquencies would fly under their radar until he was able to correct them.[12]

It is true that, when he found himself under oath and was asked a (perhaps unexpected) question related to his own compliance with the law, he admitted to a significant tax delinquency and that he has made very substantial efforts to come into compliance with his tax obligations. Again, those are matters that may weigh in his favor in determining an appropriate sanction; they do not negate a finding of a violation of Rule 8.4(c).

---

[12] On cross-examination before the hearing judge, Mr. Yates admitted that he had avoided contact with the tax authorities to avoid drawing attention to himself that would trigger a tax lien or other enforcement action.

In sum, Mr. Yates' willful failure to timely file returns and to pay taxes also violated Rule 8.4(c).[13]

**D.    *Rule 8.4(d)***

Rule 8.4(d) provides that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice."

Mr. Yates has not contested that his misconduct violated Rule 8.4(d) – and for good reason. This Court has held that an attorney's willful failure to file tax returns and pay taxes is "inherently conduct that is prejudicial to the administration of justice[,]" regardless of whether the attorney was criminally prosecuted for the offense. *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 600 (1995); *see also Attorney Grievance Comm'n v. Clark,* 363 Md. 169, 182-84 (2001) (an attorney's failure to timely make required tax filings "erodes public confidence [in the legal profession] and thus, is prejudicial to the administration of justice"). An attorney's willful failure to file suggests that the attorney believes he or she is above the law, which impairs confidence in the legal system. *Walman*, 280 Md. at 464-65. Even in failure to file cases in which this Court has not found a violation of Rule 8.4(b) or its predecessor disciplinary rule, the Court has concluded that such conduct is prejudicial to the administration of justice. *See Attorney Grievance*

---

[13] We thus sustain Bar Counsel's exception to the hearing judge's failure to find a violation of this section. The hearing judge concluded that Mr. Yates had not violated Rule 8.4(c) based on Bar Counsel's responses to Mr. Yates' requests for admissions, in which Bar Counsel admitted that Mr. Yates had not made any misrepresentations or false statements and had not committed fraud. However, such affirmative actions are not a prerequisite to establishing dishonesty in violation of Rule 8.4(c). In certain contexts, a failure to do something when action is required can also amount to dishonesty.

*Comm'n v. Gavin,* 350 Md. 176 (1998); *Attorney Grievance Comm'n v. Post*, 350 Md. 85 (1998); *Attorney Grievance Comm'n v. Gilland*, 293 Md. 316 (1982); *Walman,* 280 Md. at 463 (willful failure to file, even if not a crime of moral turpitude, was "conduct prejudicial to the administration of justice").

Accordingly, we agree that Mr. Yates' conduct also violated Rule 8.4(d).

## III

## Sanction

Bar Counsel has recommended that we suspend Mr. Yates indefinitely from the practice of law in Maryland with the proviso that he may apply for reinstatement after one year. Mr. Yates has argued that a reprimand would be more appropriate in these circumstances.

The sanction imposed in an attorney disciplinary proceeding is intended to protect the public from an errant attorney, to deter similar misconduct by others, and to maintain public confidence in the legal profession. Inevitably, the sanction must be tailored to the facts of the misconduct and the circumstances of the particular attorney. In doing so, we consider any aggravating and mitigating factors. The American Bar Association has developed a list of such factors, which we typically consult. *See Attorney Grievance Comm'n v. Blatt,* 463 Md. 679, 707-8 n.19 (2019) (listing aggravating and mitigating factors).

### A. *Aggravating and Mitigating Factors*

The hearing judge found that Mr. Yates had established eight mitigating factors: absence of a dishonest or selfish motive; personal or emotional problems; cooperation with

Bar Counsel's investigation; good character and reputation; physical or mental disability or impairment; good faith efforts to rectify the consequences of the misconduct; imposition of other penalties or sanctions; and remorse. Bar Counsel has excepted to the hearing judge's finding that a mental disability – Mr. Yates' attention deficit and related disorders – should be considered a mitigating factor.

We discuss only the issue of mental disability and, in light of the record of this case, otherwise accept the findings of the hearing judge concerning mitigating factors. We note that the current version of the ABA's compilation of mitigating factors states that a mental disability should be considered a mitigating factor when:

1. There is medical evidence that the respondent is affected by a … mental disability;

2. The … mental disability caused the misconduct;

3. The respondent's recovery from the … mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

4. The recovery arrested the misconduct and recurrence of the misconduct is unlikely.

*See* American Bar Association, *ABA Compendium of Professional Responsibility Rules and Standards* (2017), §9.32 at 464.

Similarly, although not directly relevant to this case, this Court has held that, in cases involving intentional dishonesty, misappropriation, or fraud, a sanction less than disbarment is appropriate only when the attorney suffers from the "most serious and utterly debilitating mental and physical health conditions, arising from [a] source that is the 'root cause' of the misconduct and that also results in the attorney's utter inability to conform"

20

the attorney's conduct to the rules of professional conduct. *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413-14 (2001).

In our view, the testimony concerning Mr. Yates' attention deficit disorder and related conditions was clearly insufficient to negate his violations of Rule 8.4. To the extent that testimony suggested that he lacked the ability to meet deadlines or prepare filings, it may have raised a question as to whether Mr. Yates could competently render legal services to clients. However, it appears to be undisputed that he performed well in providing timely and competent service to the immigration lawyers for whom he substitutes and their clients. To the extent that Mr. Yates suffers from a mental disability, it does not prevent him from being punctual and prepared when necessary. It does not appear to have "caused" the misconduct or made it necessary for Mr. Yates to demonstrate "a meaningful and sustained period of successful rehabilitation" from that disability. We sustain Bar Counsel's exception that Mr. Yates' diagnosis of an attention deficit disorder and related conditions are a mitigating factor with respect to the sanction in this case.

The hearing judge found three aggravating factors: prior discipline, a pattern of misconduct, and substantial experience in the practice of law. Mr. Yates has not excepted to these findings and we agree that the record establishes all three. As recounted earlier, Mr. Yates received a reprimand 14 years ago as a sanction for missing a deadline in an immigration case. As to the other two factors, it suffices to say that, during his third decade as a member of the bar, he had a consistent pattern of failing to timely file tax returns and pay taxes.

21

### B.      Discussion

In arguing that a reprimand is the appropriate sanction, Mr. Yates' counsel analogizes the circumstances of this case to those in *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176 (1998). In *Gavin,* an attorney's wife had taken on the responsibility, over time, for collecting necessary materials and engaging a tax preparer to prepare the couple's tax returns. Once the returns were prepared, she would, according to an understanding with her husband, sign the returns for both of them and file the returns. After a basement flood destroyed certain records one year, the wife ceased filing returns for a number of years, without the attorney's knowledge. When the wife finally revealed the delinquency to her husband, the attorney immediately consulted a tax adviser but did not begin to rectify the matter for nearly two years. When the returns were finally prepared, it turned out that the couple either owed no additional tax or was entitled to significant refunds for the years in question. Given the attorney's initial ignorance of the fact that returns were not timely filed, this Court agreed with the hearing judge that there was not sufficient evidence of a "willful" failure to file by the attorney. However, his delay in rectifying the matter was conduct prejudicial to the administration of justice, in violation of Rule 8.4(d). The Court issued a reprimand.

Perhaps to his credit, Mr. Yates has not blamed his wife – or anyone else, for that matter – for his failure to timely file returns and pay taxes. While Mr. Yates and his accountant both testified that he likely would not have had any tax liability during many of the years in question if he had kept better records, that appears to largely be speculation that, given the absence of documentation, is impossible to confirm or refute. Unlike the

22

attorney in *Gavin*, Mr. Yates was not ignorant of his delinquency, which extended over a considerably longer period of time than the misconduct of the attorney in *Gavin*. The cases are not analogous.

In arguing that the Court should impose an indefinite suspension with a right to apply for reinstatement in one year, Bar Counsel relies on the recent decision in *Attorney Grievance Comm'n v. Gianetti*, 456 Md. 465 (2017). That case involved an attorney who had failed to file returns and pay taxes for a similar period of time as Mr. Yates. However, comparison of the aggravating and mitigating circumstances in the two cases weighs significantly in Mr. Yates' favor. In *Gianetti*, the hearing judge found just one mitigating factor – the attorney's belated cooperation with Bar Counsel – which this Court discounted in light of the other facts of the case. While the same three aggravating factors existed in *Gianetti* as in this case, five other serious aggravating factors were also present in that case. In particular and in stark contrast to this case, the attorney in *Gianetti* was motivated by selfish pecuniary reasons, demonstrated little interest in rectifying his tax delinquency, and obstructed the disciplinary proceedings by failing to make any response to Bar Counsel's discovery requests without any good faith reason. 456 Md. at 479-82.

A more analogous case is *Attorney Grievance Comm'n v. Tayback,* 378 Md. 578 (2003). In that case, an attorney failed to timely file returns over a seven-year period. This Court suspended the attorney indefinitely, with a right to reapply in 60 days. The attorney had presented evidence that he had been diagnosed with a mental condition – obsessive-compulsive disorder – but both the hearing judge and this Court declined to consider that

diagnosis as a mitigating factor. However, in contrast to this case, in *Tayback*, the attorney had been convicted of a criminal tax offense in federal court.

In this case, unlike the attorneys in *Gianetti* or *Tayback*, Mr. Yates made some efforts to pay his taxes even during the period he failed to file returns. He disclosed his tax delinquency to Bar Counsel when asked a general background question that others might have parried. He has made very significant efforts to pay off his tax liability, as well as interest and penalties, by devoting most of the equity recovered in the sale of the farm to that purpose. And, during this same period, he has tended to a very ill spouse and, by the accounts of his peers at the immigration court, been an important resource to attorneys, clients, and others in that venue. *See Attorney Grievance Comm'n v. O'Toole*, 379 Md. 595 (2004) (in light of significant mitigating circumstances, 30-day suspension was appropriate sanction for attorney who failed to file personal income tax returns and withholding forms for employees during three-year period).

It is evident from the hearing judge's opinion that the hearing judge, who had the opportunity to observe Mr. Yates testify, was very impressed by Mr. Yates and found him credible. We accord that assessment considerable weight. While we have disagreed with the legal analysis of the hearing judge in certain respects, we credit his assessment of Mr. Yates' character apart from the violations that bring Mr. Yates before us.

Many attorneys are confronted with demanding circumstances in their practice, as well as other aspects of their lives, yet carry out their civic and legal obligations. One might empathize with, perhaps even admire, certain conduct of Mr. Yates. But one's good deeds are not a free pass on a civic obligation like the filing of income tax returns and the

payment of taxes due. To suggest otherwise would cast the legal profession in serious disrepute. A sanction is necessary that recognizes this principle while allowing Mr. Yates an opportunity to continue to rectify his tax delinquency and support his family.

## C.    *Conclusion*

In our view, the appropriate sanction in this case is a suspension for 60 days. The suspension shall begin 30 days after the date on which this opinion is filed. Pursuant to Maryland Rules 19-742(e)(2) and 19-752(j), we will require, as a condition of Mr. Yates' reinstatement following the suspension, that he provide Bar Counsel with confirmation that he is current at that time on required tax filings and on the payment of his tax liability or, to the extent that he is not current on the payment of taxes, that he is current on the payment plans that he and his wife have with the IRS and the Comptroller.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES DARROW YATES.**

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 53

September Term, 2018
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

CHARLES DARROW YATES
_____

Barbera, C.J.
McDonald
Watts
Hotten
Booth
Biran
Battaglia, Lynne A.
 (Senior Judge, Specially
 Assigned),

JJ.
_____

Dissenting Opinion by Watts, J.
_____

Filed: February 28, 2020

Respectfully, I dissent. I disagree with the majority opinion's determination that the appropriate sanction in this case is a definite suspension for sixty days. See Maj. Slip Op. at 25. I would indefinitely suspend Yates from the practice of law with the right to apply for reinstatement after ninety days. Like the majority opinion, I would condition reinstatement on Yates satisfying any income tax liability, or being current on any payment plans as to his income tax liability. See id. In my view, Yates's misconduct and this Court's case law compel this result.

For seven years in a row, Yates willfully failed to file income tax returns. His failures constituted federal crimes under 26 U.S.C. § 7203, Maryland crimes under Md. Code Ann., Tax-Gen. (1988, 2016 Repl. Vol.) § 13-1001(d), and violations of Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1] 8.4(a) (Violating the MARPC), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice). Maryland case law reveals that a definite suspension for sixty days is not the appropriate sanction for willfully failing to file income tax returns for seven years. This Court has consistently at least imposed an indefinite suspension for such misconduct.

In Attorney Grievance Comm'n v. Tayback, 378 Md. 578, 595, 590-91, 837 A.2d 158, 165-66, 161 (2003), this Court indefinitely suspended, with the right to apply for reinstatement after sixty days, an attorney who violated MARPC 8.4(b), 8.4(c), and 8.4(d)

[1]Effective July 1, 2016, the Maryland Lawyers Rules of Professional Conduct ("the MLRPC") were renamed the MARPC and renumbered. Some of Yates's misconduct occurred while the MLRPC were effective, and some occurred while the MARPC were effective.

by willfully failing to file income tax returns for seven years. This Court observed: "The willful failure to file [income tax] returns . . . is a crime under both federal and Maryland law." Id. at 587, 837 A.2d at 164 (citations omitted). This Court also noted: "The repeated failure to timely file tax returns is a serious violation of the" MARPC. Id. at 588, 837 A.2d at 164. This Court explained: "By willfully failing to file his [or her income] tax returns, a lawyer appears to the public to be placing him[- or her]self above [the] law." Id. at 591, 837 A.2d at 166 (cleaned up).

In Attorney Grievance Comm'n v. Atkinson, 357 Md. 646, 659, 656, 654, 745 A.2d 1086, 1093, 1091, 1090 (2000), this Court indefinitely suspended, with the right to apply for reinstatement after one year, an attorney who violated MARPC 8.4(b), 8.4(c), and 8.4(d) by willfully failing to file income tax returns for eleven years. As the majority opinion notes, see Maj. Slip Op. at 14, and as we pointed out in Atkinson, 357 Md. at 652, 745 A.2d at 1089-90, Comment 2 to MARPC 8.4 states: "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return." In Attorney Grievance Comm'n v. Giannetti, 456 Md. 465, 482, 479, 473, 175 A.3d 119, 129, 127, 123 (2017), this Court indefinitely suspended, with the right to apply for reinstatement after one year, an attorney who violated MARPC 8.4(b), 8.4(c), and 8.4(d) by willfully failing to file income tax returns "for at least seven years[.]" This Court used the term "at least" because the record did not foreclose the possibility that, at the time of the attorney discipline proceeding, the attorney was continuing to willfully fail to file income tax returns. Id. at 482, 175 A.3d at 129.

There is no meaningful distinction between the circumstances of this case and those

of Tayback, 378 Md. 578, 837 A.2d 158.[2]  With the possible exception of Yates's prior attorney discipline, see Attorney Grievance Comm'n v. Yates, 391 Md. 287, 892 A.2d 578 (2006), which would argue for a more severe sanction, the cases are the same.  Both Yates and Tayback were found to have violated MARPC 8.4(b), 8.4(c), and 8.4(d) by willfully failing to file income tax returns for seven years.  See Tayback, 378 Md. at 590-91, 583, 837 A.2d at 165-66, 161.  The majority opinion identifies as a distinction that Tayback "had been convicted of a criminal tax offense in federal court."  Maj. Slip Op. at 24.  That offense was a violation of 26 U.S.C. § 7203, which criminalizes the willful failure to timely file a federal income tax return.  See Tayback, 378 Md. at 583 & n.6, 837 A.2d at 161 & n.6.  This is the same federal criminal statute that the majority opinion determines Yates's conduct to have violated.  See Maj. Slip Op. at 12-14.  The sole difference is that Tayback was prosecuted, and Yates was not.  Indeed, it could be argued that Tayback's federal conviction and sentence would be a factor compelling a lesser sanction because he had already incurred a penalty for his conduct.

In attempting to distinguish this case from Tayback, the majority opinion states that Yates "disclosed his tax delinquency to Bar Counsel when asked a general background question that others might have parried."  Maj. Slip Op. at 24.  Yates did not voluntarily

---

[2]On the other hand, Bar Counsel's assertion that a one-year indefinite suspension is warranted in light of Atkinson and Giannetti is unpersuasive.  Atkinson, 357 Md. at 654, 657, 745 A.2d at 1090, 1092, is distinguishable because the attorney willfully failed to file income tax returns for eleven years.  Giannetti, 456 Md. at 482, 480, 175 A.3d at 129, 127, is distinguishable because the record did not foreclose the possibility that, at the time of the attorney discipline proceeding, the attorney was continuing to willfully fail to file income tax returns, and because there were eight aggravating factors.

disclose his willful failure to file income tax returns. Rather, while being deposed by Bar Counsel as a witness in an unrelated matter, Yates responded to a question from Bar Counsel that he was "slightly behind in filing [income] tax returns[.]" Id. at 7. Yates was under oath and required to answer all questions truthfully.

Both Tayback and Yates contended that mental health problems caused them to be unable to file income tax returns. In both cases, this Court concluded that the alleged mental health problems were insufficient to serve as mitigating factors with respect to the sanction. In Tayback, 378 Md. at 595, 837 A.2d at 168, we stated: "Considering the seriousness of the violations, respondent has not carried his burden to establish sufficient mitigating factors to justify a sanction less than indefinite suspension." The same can be said of Yates.

In light of the circumstance that Yates and Tayback engaged in identical misconduct, except that this is not the first time that this Court has sanctioned Yates—*i.e.*, he has a record of prior attorney discipline—the appropriate sanction is an indefinite suspension from the practice of law with the right to apply for reinstatement after ninety days, and with reinstatement conditioned on him satisfying any income tax liability, or being current on any payment plans as to his income tax liability. Undoubtedly, in each attorney discipline proceeding, this Court must consider the individual characteristics of the respondent and the unique circumstances of the case. But, in doing so, this Court should remain faithful to existing case law, the goal of protecting the public, and consistency.

The majority opinion seems to adopt the logic of the hearing judge as to the appropriate sanction. The hearing judge stated: "Rather than impose a sanction that would

interrupt [Yates's] only source of income . . . , the Court of Appeals may well conclude that society's interest is better served by preserving [Yates]'s ability to meet all of his obligations to his family, to his clients[,] and to the public at large." Similarly, the majority opinion states: "A sanction is necessary that . . . allow[s] Yates an opportunity to continue to rectify his tax delinquency and support his family." Maj. Slip Op. at 25. Putting aside that it is not a hearing judge's role to suggest an appropriate sanction, this reasoning is foreclosed by Atkinson, 357 Md. at 659, 745 A.2d at 1093, in which this Court indefinitely suspended, with the right to apply for reinstatement after one year, an attorney who willfully failed to file income tax returns for eleven years. This Court was unpersuaded by the attorney's assertion that a suspension would hinder her ability to repay her debts to the federal and State governments. See id. at 656, 745 A.2d at 1091.

Also, the majority opinion's assessment of aggravating factors and mitigating factors is troubling. See id. at 19-21. First, in addition to the aggravating factors found by the majority opinion, see id. at 21, Yates's misconduct is aggravated by multiple violations of the MARPC. And, Yates's misconduct is not mitigated by timely good faith efforts to rectify the misconduct's consequences in the form of selling the farm (an entity that had not proven profitable) and applying the proceeds toward his income tax liability. See id. at 19-20. Filing income tax returns and paying income taxes are two distinct duties, and fulfilling one does not excuse shirking the other. Over and over again, this Court has reached that conclusion. In Tayback, 378 Md. at 593, 837 A.2d at 167, this Court determined that the circumstance that the attorney had satisfied his income tax liability did "not diminish the seriousness of the violations of the M[A]RPC." This Court explained:

"Repayment may mitigate the consequences of the illegal action, but does not mitigate the act itself[.]" Id. at 593, 837 A.2d at 167 (cleaned up). In Atkinson, 357 Md. at 657-58, 745 A.2d at 1092, this Court determined that the attorney's misconduct was not mitigated by her entering into a payment plan as to her income tax liability. This Court explained: "[A]n offending attorney's after-the-fact cooperation with authorities is commendable[;] nonetheless[,] we have consistently refused to treat such cooperation as a mitigation of the underlying conduct." Id. at 658, 745 A.2d at 1092 (citations omitted).

There is a difference between a definite suspension, which the majority opinion imposes, see Maj. Slip Op. at 25, and an indefinite suspension. Two Maryland Rules govern reinstatement. See Md. R. 19-751, 19-752. The one that applies to indefinite suspensions, Maryland Rule 19-752, see Md. R. 19-752(a), requires a petitioner for reinstatement who has been indefinitely suspended to provide a variety of information to Bar Counsel and this Court, see Md. R. 19-752(c)(3), (d)(1), (d)(2). For example, the petitioner must provide Bar Counsel, among other things: the addresses of all of his or her residences during the period of suspension; copies of all State and federal income tax returns, starting from three years before the effective date of the order of suspension; all creditors' names and addresses; and the names and addresses of all financial institutions where the petitioner has accounts, deposits, loans, or safe deposit boxes and written authorization for Bar Counsel to obtain financial records from those institutions. See Md. R. 19-752(d)(2). Bar Counsel is required to file in this Court a response to the petition for reinstatement, see Md. R. 19-752(e), and has the opportunity to bring to this Court's attention any concerns with regard to the information that the petitioner provided, or failed

- 6 -

to provide, to Bar Counsel.  In sum, where an attorney has been indefinitely suspended, Maryland Rule 19-752 requires Bar Counsel to review a variety of materials and determine whether to consent to, or oppose, the attorney's reinstatement.

Where an attorney has been indefinitely suspended, Maryland Rule 19-752(h) sets forth various criteria that this Court must consider in determining whether to grant or deny the petition, and the attorney's reinstatement is not guaranteed after a specified time period, if any, has expired.  By contrast, Maryland Rule 19-751 applies to definite suspensions that are six months or fewer.  See Md. R. 19-751(a).  Under Maryland Rule 19-751(c)(2) and (c)(3), once a period of definite suspension has ended, and the attorney has satisfied any conditions that this Court imposed in the order of suspension, he or she is eligible for reinstatement.

It is commendable that the majority opinion conditions reinstatement on Yates satisfying any income tax liability, or being current on any payment plans as to his income tax liability.  See Maj. Slip Op. at 25.  These conditions, however, do not ensure that, if Yates applies for reinstatement, this Court and Bar Counsel will receive the type of information about Yates that would have been required if this Court had imposed an indefinite suspension.  Where an attorney has willfully failed to file State and federal income tax returns for the greater part of a decade, this Court should want to assure itself, before granting a petition for reinstatement, that the attorney is financially stable and capable of rejoining the practice of law without posing a risk to the public.

I have not found, and the Majority does not identify, any prior case in which this Court imposed a definite suspension on an attorney who violated MARPC 8.4(b) and 8.4(c)

by willfully failing to file income tax returns over a number of years. Until today, this Court has consistently imposed indefinite suspensions for such criminal, dishonest misconduct, see Giannetti, 456 Md. at 482, 175 A.3d at 129; Tayback, 378 Md. at 595, 837 A.2d at 168; Atkinson, 357 Md. at 659, 745 A.2d at 1093, unless there were additional circumstances that, together with willful failure to file income tax returns, warranted disbarment instead, see Attorney Grievance Comm'n v. Katz, 443 Md. 389, 412, 116 A.3d 999, 1013 (2015); Attorney Grievance Comm'n v. Worsham, 441 Md. 105, 136, 105 A.3d 515, 533 (2014).[3] The definite suspension that the Majority imposes undermines a line of cases in this Court's attorney discipline jurisprudence. The majority opinion forgets that "Maryland [attorney]s and the citizenry are best served when 'consistent dispositions for similar misconduct' are imposed." Attorney Grievance Comm'n v. Katz, 429 Md. 308, 318, 55 A.3d 909, 914-15 (2012) (citations omitted). "[T]he public interest is served when this Court imposes a sanction [that] demonstrates to [attorneys] the type of conduct that will not be tolerated." Attorney Grievance Comm'n v. Myers, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994). I am concerned that, going forward, this case may give the impression

---

[3]In a case that is distinguishable, in Attorney Grievance Comm'n v. Gavin, 350 Md. 176, 198, 711 A.2d 193, 204 (1998), this Court reprimanded an attorney for violating MARPC 8.4(d) by failing to promptly take corrective action upon learning that his wife had failed to file income tax returns on his behalf. Id. at 198, 711 A.2d at 204. The attorney and his wife had agreed that she would "tak[e] care of [] tax matters[,]" and, at first, the attorney "never had reason to suspect his wife was not taking care of their tax obligations because, up until [a certain year], no problems with the family's arrangements were known to him." Id. at 191, 711 A.2d at 201 (footnote omitted). Based on these circumstances, the hearing judge found, and this Court did not dispute, that the attorney "did not participate voluntarily or intentionally in the failure to file the [income tax] returns[.]" Id. at 192, 711 A.2d at 201.

that it is not serious misconduct to willfully ignore the obligation to file income tax returns

for over half a decade, and that, after a brief definite suspension, the continued practice of

law in Maryland is assured.

      For the above reasons, respectfully, I dissent.